# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-1359

**T. S., INDIVIDUALLY AND ON
BEHALF OF HER MINOR DAUGHTER
K.P.S.**

**VERSUS**

**RAPIDES PARISH SCHOOL BOARD AND
LARRY LEBEOUF**

*********

APPEAL
FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 220100
HONORABLE HARRY F. RANDOW, PRESIDING
**********

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and J. David Painter, Judges

**AFFIRMED**
**Thibodeaux, Chief Judge, concurs in the result.**
**Painter, J. concurs in part and dissents in part with written reasons.**

Laura N. Sylvester
Johnson & Siebeneicher, Inc.
P. O. Box 648
Alexandria, LA 71309
Ph: (318) 484-3911
Fx: (318) 484-3585
Attorney for Defendant/Appellant

Eugene A. Ledet, Jr.
Rivers, Beck, Dalrymple & Ledet
P. O. Drawer 12850
Alexandria, LA 71315-2850
Ph: (318) 445-6581
Fx: (318) 445-3708
Attorney For Plaintiff/Appellee

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Plaintiff, K.P.S., (hereinafter sometimes referred to as "Plaintiff"), though a minor at the time suit was filed, reached the age of majority prior to trial. The pleadings were amended at trial to name K.P.S. as the sole plaintiff.

K.P.S., a fifteen-year-old sophomore student at Alexandria Senior High, was sexually assaulted on two different occasions by her teacher, Mr. Larry Lebeouf, (hereinafter referred to as "Lebeouf") in his classroom during the 2004 spring semester. On the first occasion, Plaintiff was engaged in volunteer work with special education students with another teacher, Mrs. Lisa Henderson, whose classroom was next to Lebeouf's. Mrs. Henderson invited Plaintiff to visit her special education class. Plaintiff became a daily volunteer for Mrs. Henderson's class during her lunch period. Mrs. Henderson instructed Plaintiff to go to Lebeouf's classroom to borrow a meter stick needed in the project on which Plaintiff and Mrs. Henderson were working. Upon handing the meter stick to Plaintiff, Lebeouf made offensive comments to Plaintiff telling her, "You sure are stacked for a white girl," and then, put his hand on the small of Plaintiff's back, pulled her to him, and "French-kissed" her on the mouth. When Plaintiff refused Lebeouf's advance and reminded him that he was a teacher, he responded that he "was not her teacher," implying that this fact made his behavior acceptable. Plaintiff did not consent to this action by Lebeouf and was shocked by the behavior. She returned to Mrs. Henderson's classroom afraid to report the incident.

On the second occasion, again while doing volunteer work with Mrs. Henderson's special education class, Plaintiff accompanied Mrs. Henderson at her request to Lebeouf's classroom. Mrs. Henderson needed Lebeouf's assistance with

a computer problem. Lebeouf was often called upon to assist other teachers with computer problems. During this episode, Plaintiff stood quietly in the center of the room until the matter was completed. Mrs. Henderson exited the classroom just ahead of Plaintiff. As Plaintiff was attempting to leave Lebeouf's classroom he grabbed her by the wrist and pulled her back into the room. Again, Lebeouf placed his hand in the small of Plaintiff's back, pulled her to him, and "French-kissed" her on the mouth. Plaintiff told Lebeouf not to ever do such a thing to her again.

Plaintiff was again shocked, embarrassed, and upset that a teacher would engage in such behavior. Plaintiff did not tell her mother nor school officials at that time about the second incident. She felt ashamed and guilty as though she had done something wrong, and felt that if she told on Lebeouf it might somehow reflect badly upon Mrs. Henderson. She instead tried to put the incidents out of her mind. Plaintiff was no longer able to do volunteer work with Mrs. Henderson's special education students as she was afraid and uncomfortable to go near Lebeouf's classroom.

About a month after the second episode, Plaintiff confided in her friends about the two incidents as she learned that other girls at school had also alleged Lebeouf engaged in inappropriate behavior with them. In the spring of the following year, complaints were filed against Lebeouf by a parent and a female student. Shortly thereafter Plaintiff gave a statement to Mr. Urbina, the school disciplinarian, detailing the two incidents with Lebeouf. Plaintiff was made to repeat the details of her account and relive the incidents four times to school officials and later to the police, to child advocacy representatives, and to the grand jury. Plaintiff also testified after Lebeouf's conduct was made public she was treated badly by other girls at school who were fond of Lebeouf as coach for the girl's track team. Plaintiff felt compelled to leave school that semester and was home-schooled for the remainder of

the school year.

Plaintiff testified she was still having nightmares about these events even just prior to trial despite the fact that as of trial she was 19 years old. Plaintiff testified she had never been kissed before Lebeouf forced himself upon her, and, as a result of Lebeouf's assaults, she has developed issues of trust in dating members of the opposite sex.

Lebeouf was charged criminally with multiple counts of indecent behavior with a juvenile as to three different victims, one of whom was the Plaintiff herein. Lebeouf entered into a plea bargain in criminal court whereby he entered a plea of guilty to three charges of simple battery in lieu of multiple original charges of indecent behavior with a juvenile. The record reflects Lebeouf was fined $500.00 on each count, all to run concurrently, ordered to pay $149.00 court costs, and ordered to serve 30 days in jail in default of payment. He was placed on two years supervised probation and ordered to have no contact with his three victims.

Plaintiff settled her civil claims against Lebeouf just prior to trial leaving only the Rapides Parish School Board (hereinafter referred to as "School Board") as the remaining defendant. Lebeouf did not appear at trial and offered no testimony in the matter. The School Board moved for a continuance of the trial asking the court to allow the School Board to take Lebeouf's testimony by deposition in lieu of live testimony, alleging it would work a hardship on Lebeouf to travel from Kansas to appear at the trial. The trial court denied the motion to continue and trial proceeded as scheduled.

Satisfied that Plaintiff was a very credible witness, the trial judge found the School Board liable for Lebeouf's actions and awarded Plaintiff $45,000.00 in general damages. The School Board thereafter filed a Motion For New Trial based

on La.Code Civ.P. art. 1973, asserting the trial court's refusal to leave the record open to allow the School Board to secure the testimony of Lebeouf was a miscarriage of justice. The trial court denied the Motion For New Trial. Defendant School Board appeals the judgment of the trial court, asserting the School Board has no liability for the actions of Lebeouf and asserting that the award of damages is excessive. Plaintiff has not appealed.

## DISCUSSION

Lebeouf admitted his perverted behavior toward young K.P.S. and apparently admitted criminal behavior with two other young girls. Yet, somehow, he was only assessed a minimal combined fine and court costs and declared eligible to expunge his plea pursuant to Code Crim.P.art. 894. In the end, he was granted leave by the criminal court to erase any record of his misdeeds.

Now, the School Board asserts it is not liable for the actions of one of its teachers despite the admitted facts that Lebeouf committed an intentional tort of a sexual nature upon the person of a student, and the tort occurred on the school campus, in a classroom, during the school day, between a teacher and a student while the teacher was offering assistance to the student and another teacher. The School Board argues Lebeouf was not acting in the course and scope of his employment as a teacher when he engaged in these sexual acts with a student. In part, the School Board asserts Lebeouf was acting outside the course and scope of his employment as a teacher because he was merely dealing with a student-at-large who was not one of his students. It is hard to imagine a more far-fetched argument properly characterized by the trial judge as a "feeble" one.

The question of whether Lebeouf's conduct was sufficiently employment-related so as to impose vicarious liability on the School Board is a mixed question of

law and fact. The trial court's determination of this mixed question is entitled to great weight and will not be disturbed on appeal absent manifest error. *Reed v. Wal-Mart Stores, Inc*., 97-1174 (La. 3/4/98), 708 So.2d 362; *Russell v. Noullet*, 98-816 (La. 12/1/98), 721 So.2d 868.

The trial court expressly found that K.P.S. was a "very credible witness." Obviously the trial court believed K.P.S.' testimony. In applying the manifest error standard of review, we view the evidence herein in a light most favorable to Plaintiff, the prevailing party. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994. The record clearly demonstrates there was a reasonable factual basis for the trial court to conclude Lebeouf's conduct was employment-related. Additionally, we note the only other eye witness to the nefarious acts of Lebeouf was Lebeouf himself. Plaintiff's testimony as to Lebeouf's conduct is uncontroverted because it apparently was too inconvenient for Lebeouf to return to Louisiana to shed any new light on his conduct. The trial court's factual findings and judgment are reasonable and supported by the record.

The Louisiana Supreme Court set forth four factors to determine whether an employer should be held vicariously liable for the tortious acts of its employee: 1) was the tortious act primarily employment rooted; 2) was the conduct reasonably incidental to performance of the employee's duties; 3) did the conduct occur on the employer's premises; and 4) did the conduct occur during the employee's hours of employment. *LeBrane v. Lewis,* 292 So.2d 216 (La.1974). The School Board's liability is rooted in the provisions of La.Civ.Code art. 2320, which establishes the master's liability for damage occasioned by his servant if the servant is acting in the exercise of functions in which he is employed. Article 2320 further imposes liability upon the master for his servant's offenses and quasi-offenses according to the rules

which are explained under *Of Offenses and Quasi-Offenses*, La.R.S. 9:2791, *et. seq.* This liability stems from the broader principles enunciated in La.Civ.Code art. 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," and La.Civ.Code art. 2317, "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable . . . ". The provisions of Article 2320 are modifications of these precepts. La.Civ.Code art. 2317.

The supreme court has explained that being in the "course of employment" relates to time and place while the "scope of employment" relates to determining whether the conduct is an employment-related risk of injury. *Benoit v. Capitol Mfg. Co.,* 617 So.2d 477 (La.1993); *Orgeron v. McDonald,* 93-1353 (La. 7/5/94), 639 So.2d 224. Both sexual assaults upon Plaintiff occurred at school, in a classroom, during the school day hours, while the defendant teacher was engaged in assisting that student and a fellow teacher with school business. We cannot say the trial court manifestly erred in finding Lebeouf's conduct sufficiently employment-related so as to impose vicarious liability on his employer, the School Board. LeBeouf's conduct while interacting with a female student in his classroom during school hours when that student and LeBeouf were clearly engaged in school business, was, indeed, so closely related in time, place, and causation to Lebeouf's employment duties as a teacher, as to be regarded a risk of harm fairly attributable to the School Board's business. *See LeBrane,* 292 So.2d 216.

The School Board argues $45,000.00 in damages is excessive. We find no abuse of discretion in the trial court's award of what appears to be damages on the low side. This was an equitable recompense for what this Plaintiff has suffered. K.P.S. was made to relive the crimes perpetrated against her over and over, in public

forums before a grand jury in her community and in a civil trial. Moreover, as she testified, she has relived the incidents in repeated nightmares which haunt her still. She carries with her the scars inflicted by Lebeouf, invading her life in the form of trust issues with other men and with dating. Her first kiss, which should have been with a boy her age of her own choosing, was, instead, a forced episode by an adult married man in a position of trust and respect. What monetary award can hope to replace such a loss? The award is by no means excessive.

## DECREE

For the foregoing reasons, the judgment is affirmed. All costs of this appeal are assessed against the Rapides Parish School Board.

**AFFIRMED.**
**Thibodeaux, Chief Judge, concurs in the result.**
**Painter, J. concurs in part and dissents in part with written reasons.**

NUMBER 08-1359

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

T.S. INDIVIDUALLY AND ON
BEHALF OF HER MINOR DAUGHTER,
K.P.S.

VERSUS

RAPIDES PARISH SCHOOL BOARD AND
LARRY LEBEOUF

PAINTER, J., concurring in part and dissenting in part.

While I agree with the majority opinion in affirming the liability of the Rapides

Parish School Board, I respectfully dissent from the majority's view that an award of

$45,000.00 in general damages is reasonable under the facts and circumstances of this

case.

With regard to our review of a general damage award:

the role of an appellate court in reviewing general damages is not to
decide what it considers to be an appropriate award, but rather to review
the exercise of discretion by the trier of fact. Each case is different, and
the adequacy or inadequacy of the award should be determined by the
facts or circumstances particular to the case under consideration.

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993).

In this case, the student was "French kissed" by a teacher on two different

occasions. Plaintiff testified that she had never been kissed before Lebeouf forced

himself upon her. She further alleges that as a result of Lebeouf's behavior, she has

developed issues of trust in dating members of the opposite sex. She testified that she

was embarrassed and ashamed and "just turned into like this little quiet stone of

myself." She further testified that she still had nightmares and panic attacks. In its

written reasons for judgment, the trial court stated:

The Court judged [K.P.S.] to be a very credible witness and has
found that she met her burden of proof that she suffers emotional
injuries as a result of her encounters with Lebeouf. In considering an

appropriate award, the [C]ourt is mindful that [K.P.S.] continues to exhibit emotional affects [sic] some four years following the date of the incidents. After a review of the jurisprudence regarding similar emotional injuries, the Court grants an award of general damages in the amount of $45,000.00.

While not diminishing the gravity of the situation, the evidence and testimony presented shows that this Plaintiff did not seek any medical assistance or counseling related to the incidents in question because she felt she "could deal with it best" herself and she was not physically injured in the incidents. Plaintiff testified that she began dating when she turned sixteen, just a few months after the incidents in question. She also testified that her reputation at school was not "ruined" when these incidents came to light. Plaintiff also testified that continued to compete in rodeo and choir just as she had before the subject incidents and that she did well in these activities. Plaintiff testified that she graduated from high school on schedule and is presently attending Louisiana State University, making straight A's, with hopes of going to law school.

In light of this evidence, I believe that the trial court abused its vast discretion in making the award of damages in the amount of $45,000.00. Accordingly, I would amend the trial court's judgment to award damages in the amount of $10,000.00.