HOLDRIDGE, J.
This personal injury suit arises out of an automobile accident. Defendants appeal a trial court judgment rendered in accordance with a jury verdict, awarding the plaintiffs $1,852,500.00 in damages. The defendants also appeal a judgment denying its Motion for a Judgment Notwithstanding the Verdict or alternatively, a Motion for New Trial. For the following *362 reasons, we amend in part and affirm as amended.
FACTUAL AND PROCEDURAL HISTORY
On October 3, 2012, John C. Rentrop was driving his 1998 GMC Bluebird school bus traveling West on La. Highway 182 near Patterson, Louisiana. Mr. Rentrop had just begun his route and the school bus was full with children. It was Mr. Rentrop's policy for children not to sit in the last four rows of the bus for safety reasons. As Mr. Rentrop's bus came to a stop to let a child off, with the bus lights on and stop signs out, he was struck from behind by a 2007 Mack MR 668S garbage truck driven by Jermaine V. Harding. Mr. Harding failed to yield to the traffic ahead of him resulting in the collision. No children were injured as a result of the accident. Mr. Harding's garbage truck was owned and operated by his employer, Progressive Waste Solutions of Louisiana, Inc. d/b/a SWDI, L.L.C., and insured by Arch Insurance Company. As a result of the accident, both the school bus and the garbage truck were declared total losses.
Following the accident, Mr. Rentrop was taken by ambulance to Teche Regional Medical Center. Mr. Rentrop complained of neck and back pain, but was discharged the same day. On October 8, 2012, Mr. Rentrop saw Dr. Lianter Albert who prescribed him a pain reliever and a muscle relaxer. Mr. Rentrop attended thirty-one sessions of physical therapy and received steroid injections, but his pain still did not recede. Although physical therapy made Mr. Rentrop more active, his pain worsened. Dr. Albert referred Mr. Rentrop to Dr. David Weir, a neurologist, for nerve conduction studies. Dr. Weir examined Mr. Rentrop and determined that he most likely needed surgical intervention because physical therapy did not have lasting benefits. Dr. Weir referred Mr. Rentrop to orthopaedic surgeon, Dr. George Raymond Williams in May of 2013 to determine if surgery was necessary for his neck and back. Dr. Williams examined Mr. Rentrop and determined that he had cervical degenerative disc disease, spondylosis, and a herniated disc.[1] Therefore, Dr. Williams recommended surgery due to Mr. Rentop's severe cervical pain. Mr. Rentrop had a cervical discectomy and fusion in July 2013. Following surgery, Mr. Rentrop's pain in his neck began to improve and his daily headaches receded.
On July 18, 2013, Mr. Rentrop and his wife, Dawn Rentrop, filed a petition for damages against Arch Insurance, Progressive Waste Solutions, and Mr. Harding for the injuries he sustained in the accident. On August 30, 2013, St. Mary Parish School Board, Mr. Rentrop's employer, intervened in the matter, seeking reimbursement for all the workers' compensation indemnity and medical benefits it paid to Mr. Rentrop.[2] On April 4, 2014, the parties jointly stipulated that Mr. Harding's negligence was the sole cause of the accident. After multiple continuances were granted, this matter was set for trial on September 12, 2016.
At trial, several witnesses testified as to Mr. Rentrop's medical condition including Mr. Rentrop and his wife. Mr. Rentrop testified that he had worked as a bus driver for over thirty-one years making approximately $30,000.00 a year, and had *363 not worked as a bus driver since the accident.[3] Mr. Rentrop explained to the jury the history of his medical condition, stating that the cervical discectomy and fusion resolved his arm pain and his neck pain decreased; however, he still had pain in his lower back. Mr. Rentrop testified that in December of 2014, Dr. Williams performed a lumbar discectomy and fusion to treat his back pain. Mr. Rentrop testified that the lumbar surgery helped alleviate his lower back pain.
To further corroborate Mr. Rentrop's testimony, the video deposition of Dr. Williams was played for the jury at trial. Dr. Williams stated in his deposition that when he saw Mr. Rentrop for the first time, he was in severe pain, reporting a "10 out of 10." Dr. Williams stated that as of the date of trial, Mr. Rentrop had met his maximum medical improvement for his neck; however, his back was "not quite solid as of yet."
The defendants presented medical expert, Dr. Walter Stanley Foster, an orthopedic surgeon, to testify regarding his independent medical examination of Mr. Rentrop. Dr. Foster examined Mr. Rentrop after both of his surgeries and reported that he was doing well and that there were no complications. Dr. Foster testified that he believed both surgeries were necessary and that as of the date of trial, Mr. Rentrop should have been at maximum medical improvement for both his neck and back. Dr. Foster further testified that he believed that all of Mr. Rentrop's treatment was related to the accident that occurred on October 3, 2012.
After a three-day jury trial, the jury returned a verdict awarding damages as follows:
*364 JOHN RENTROP A. Physical pain and suffering, past, present and future $450,000.00 B. Mental pain and anguish, past, present and future $250,000.00 C. Disability and disfigurement $125,000.00 D. Inconvenience, loss of gratification of/or intellectual $200,000.00 and/or physical enjoyment of life and loss of lifestyle E. Medical expenses, past, present and future $400,000.00 F. Loss of income, past, present and future $177,500.00 DAWN RENTROP A. Loss of consortium, love and affection, service $250,000.00 and society of her husband
On October 11, 2016, the trial court signed a judgment in accordance with the jury verdict. On October 24, 2016, the defendants filed a Motion for Judgment Notwithstanding the Verdict (JNOV) or alternatively, a Motion for New Trial (MFNT). These motions were denied in a judgment signed on December 22, 2016. The notice of the signing of the judgment was sent to the parties on January 3, 2017. Thereafter, the defendants suspensively appealed.[4]
APPLICABLE LAW
The defendants pleaded a JNOV alternatively with a MFNT.[5] A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. Broussard v. Stack, 95-2508 (La. App. 1 Cir. 9/27/96), 680 So.2d 771, 779-780. If there is evidence opposed to the motion that is of such quality and weight that *365 reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Davis v. Wal-Mart Stores, Inc., 2000-0445 (La. 11/28/00), 774 So.2d 84, 89. In making this determination, the court should not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. Broussard, 680 So.2d at 780. The standard to be applied by the appellate courts in reviewing the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous. Id.
In contrast to a JNOV, the MFNT requires a less stringent test than for a JNOV, as such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Davis, 774 So.2d at 93. In considering a MFNT, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness. Broussard, 680 So.2d at 781. The trial court's discretion in ruling on a MFNT is great, and its decision will not be disturbed on appeal absent an abuse of that discretion. Davis, 774 So.2d at 93. However, the fact that a determination on a MFNT involves judicial discretion does not imply that the trial court can freely interfere with any verdict with which it disagrees. Id. Fact-finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. Id. A MFNT solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Id.
DISCUSSION
Improper Closing Argument
The defendants argued that the plaintiffs' counsel displayed improper behavior during closing argument, warranting a JNOV, or in the alternative a MFNT. The defendants argued that the misconduct of the plaintiffs' counsel produced a prejudicial effect and "went beyond the bounds of permissible and ethical advocacy." Specifically, the defendants argue that the following statement by the plaintiffs' counsel was overly dramatic and influenced the jury verdict:
I've got to say one thing personally. I've enjoyed this trial. Thank you. I started practicing law forty-three years ago. I've had a lot of cases over the years. This is it. This is my last one this afternoon. My forty-three year old career is over with. It's been the finest and great. I just ask you to do what's right here. We've always, though the forty-three years of work, tried to go ahead and do what was right. We tried to do what was fair. We tried not to mislead people. We're not trying to do that here. We're trying to get a fair result for my client. You know, it's hard to walk away from a career that lasts that long. I just wanted to say that. Thank you so much for you attentiveness as a jury. I'm sorry. Thanks.
The defendants contend that the plaintiffs' counsel's statement had an immediate effect on at least one of the jurors who allegedly began crying during counsel's closing statement. The defendants objected to the plaintiffs' counsels' statement once the jury was removed from the courtroom.
*366 The plaintiffs counter that counsel's statement was not intentional and did not have any effect on the jury verdict. The plaintiffs further argue that regardless of whether or not the plaintiffs' counsel's statement had some effect on the jury verdict, the trial court stated during jury instruction that the jury was to disregard all arguments and comments made by the attorneys in closing arguments because of their non-evidentiary nature. Additionally, the plaintiffs argue that because the defendants did not object to counsels' statement at the time it was made, and instead waited to object after the jurors retired from the courtroom, evidences that counsels' statement had no prejudicial effect on the jury verdict.
The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law. Breitenbach v. Stroud, 2006-0918 (La. App. 1 Cir. 2/9/07), 959 So.2d 926, 931. This test is balanced against the well-settled jurisprudence that counsel has great latitude in argument before a jury. This latitude is subject to regulation and control by the court who has a duty to confine argument within the proper bounds. Id. Thus, the determination of whether actual prejudice has occurred lies within the sound discretion of the trial court, and this decision will not be overturned on appeal absent an abuse of that discretion. See State v. Wessinger, 98-1234 (La. 5/28/99), 736 So.2d 162, 183, cert. denied, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999).
We find no merit to the defendants' argument. While counsel's statement may have been slightly inappropriate, it was not overly prejudicial or inflammatory. To thank a jury for their service in closing arguments is a common practice by all attorneys in a jury trial. Furthermore, allowing an attorney with forty-three years of experience to thank a jury for their service and their participation is not so inappropriate as to influence a jury verdict.
Moreover, the allegedly prejudicial inappropriate remarks of the plaintiffs' counsel were subject to corrective measures. The trial court admonished the jury at the start of trial when it instructed the jury to disregard any statements of counsel in opening and closing arguments because "[they] are not evidence and they are not the instructions on the law" and therefore should not be considered when reaching a jury verdict. The trial court has broad discretion in controlling the scope of counsels' arguments, and the trial court was not thoroughly convinced that plaintiffs' counsel's statement influenced the jury and contributed to the verdict. See Ogletree v. Willis-Knighton Memorial Hospital, Inc., 530 So.2d 1175, 1181 (La. App. 2 Cir. 1988), writ denied, 532 So.2d 133 (La. 1988). The trial court is in a better position than an appellate court to determine the possible prejudicial effects resulting from counsel's argument before a jury. Thus, the trial court's refusal to grant the defendants MFNT or JNOV should be accorded great weight. Id.
Based on our thorough review of the record, we find that even in the event that argument of counsel may have been inappropriate, the instructions given by the trial court before trial were more than sufficient to counter any purported sympathies by the plaintiffs' counsel's closing statement. Crediting the good sense and fairmindedness of the jury, we cannot say that the jury was unduly prejudiced by the plaintiffs' counsel's remarks. We further note that because the defendants declined to poll the jurors, there is nothing in the record to prove that the allegedly crying juror was influenced by the plaintiffs' counsel's remarks. Accordingly, we find *367 that the trial court did not abuse its discretion in denying the defendants JNOV, or in the alternative MFNT, and this assignment of error lacks merit.
Loss of Consortium
The defendants also assign as error the jury's award of $250,000.00 to Mrs. Rentrop for loss of consortium. The defendants urge that this award is excessive in light of the testimony and facts of the instant matter.
In reviewing an award for loss of consortium, it is necessary to evaluate the elements that comprise a spouse's loss of consortium claim. The compensable elements include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity. Proof of any one of these components is sufficient for an award of consortium. A loss of consortium award is a fact-specific determination to be decided on a case-by-case basis and is disturbed only if there is a clear abuse of discretion. Lemoine v. Mike Munna, L.L.C., 2013-2187 (La. App. 1 Cir. 6/6/14), 148 So.3d 205, 214.
Ever since the accident on October 3, 2012, Mrs. Rentrop's life has been substantially impacted by her husband's injuries that resulted from the accident. The plaintiffs have been married for thirty-nine years and raised two children and have seven grandchildren. Mrs. Rentrop testified that before the accident, the couple was always outdoors, fishing and boating. Mr. Rentrop had always been a very active person. However, following the accident, Mr. Rentrop has been confined to his home.
Mrs. Rentrop testified regarding her employment stating that she was a pharmacy technician at Rite Aid for ten years and was at another pharmacy ten years before that. She stated that five months after Mr. Rentrop's accident, she had to quit her job to take care of her husband and has been with him every day since then attending all doctor appointments with Mr. Rentrop. She stated that since the accident, Mr. Rentrop has been unable to help out around their home like before. Mrs. Rentrop explained to the jury that before the accident, Mr. Rentrop would do household chores, such as cleaning and cooking. Since the accident, he has not been able to do any of these things because "after a while it just got to be too much."
Mrs. Rentrop further explained to the jury that since the accident, she has lost support from her husband financially. Mr. Rentrop had to close down his automotive business that he owned. Mr. Rentrop also had not returned to work as a bus driver since the accident because he was not released to return to work by his doctor.
Additionally, Mrs. Rentrop testified that since the accident, her and her husband's relationship has been strained. The following colloquy occurred between Mrs. Rentrop and counsel during trial:
A. When he gets depressed because I'm outside doing something that he feels like he should be able to do, then he gets mad. Then, of course, he gets mad at me. We don't talk. I can't say something back to him because I understand the feelings that he's having and I can't do anything about it. So we just don't talk. There's days that we will sit there and maybe say six words to each other, and it's good morning, good night, what do you want for lunch. I mean, I just can't imagine. We used to talk. We used to ride, take rides down to Bums Point just to ... talk about the kids and we'd talk about what we want to do. It's just not good right now. I love him. It's just not good right now.
*368 Q. Are things improving at all? Are they getting better? Have they pretty much reached a plateau.
A. I think it's pretty much reached a plateau
Q. You're still not working, are you?
A. No, sir.
Q. Do you have any plans on going back to work?
A. I don't see how I can.
Q. Why?
A. I've taken over his responsibilities with his mom since his dad's passed away, so I'm cutting her grass. She needs to go to the grocery store. I have my mother that's alone, so I also cut her grass. So I cut my grass. I just can't imagine what more I could take on. I can't do much more.
* * * *
Q. Now, y'all have been married a long time. I'm sure like any typical married couple personal relationships become kind of secondary. I say personal relationships. Physical relationships become secondary over time. Has that changed since the accident?
A. Yes, sir.
Q. Do you and your husband have any intimate moments since this accident?
A. No, sir.
The record reveals that Mr. Rentrop's activities have become limited due to his pain and have stopped the couple from being able to do the outdoor activities that they loved doing together. The couple had to forego their future retirement plans of buying a boat and traveling around the country. Mrs. Rentrop further testified that the accident caused a significant change in their lifestyle, including their loss of love and affection. Mrs. Rentrop testified that she now had to do majority of the household chores because Mr. Rentrop is unable to do very much besides watch television because of his pain. Moreover, because Mr. Rentrop no longer works as a school bus driver and his automotive shop had to be shut down, Mrs. Rentrop had lost support from her partner.
In light of the evidence in the record, the jury's award of $250,000.00 was not an abuse of discretion. Mrs. Rentrop's testimony proved that the accident affected their marriage and that they have experienced a loss of love and affection, loss of companionship, and a loss of support. Accordingly, we find that the trial's court's award is supported by the evidence of record and this assignment of error lacks merit. See Hall v. Brookshire Bros., Ltd., 2002-2404 (La. 6/27/03), 848 So.2d 559, 569 (wherein this court awarded a husband $200,000.00 for loss of consortium after his wife sustained disability due to a pharmacist and physicians malpractice in dispensing drugs and must now rely on her husband daily for assistance); see also Moore v. Safeway, Inc., 95-1552 (La. App. 1 Cir. 11/22/96), 700 So.2d 831, 860-861, writs denied, 97-2921 and 97-3000 (La. 2/6/98), 709 So.2d 744 (wherein this court affirmed a jury award of $200,000.00 for loss of consortium to a wife after her husband suffered a severe head injury rendering him deaf in his right ear, partially dead in his left ear, and unable to attend to his personal needs); see also Watkins v. Lake Charles Memorial Hospital, 2004-355 (La. App. 3 Cir. 12/15/04), 896 So.2d 130, 136-137, writ denied, 2005-0145 (La. 4/8/05), 898 So.2d 1279 (wherein a mother whose child suffered a stroke prior to birth, causing brain damage, was awarded $250,000.00 in loss of consortium.)
Loss of Income
The defendants next assign as error the jury's award of $177,500.00 for past, present, and future loss of income. The defendants allege that this award was *369 unjustified based on the evidence presented at trial. Specifically, the defendants argue that the award was unjustified because their vocational rehabilitation expert, Dr. Larry Stokes, testified that he evaluated Mr. Rentrop and concluded that he was able to perform several jobs within the physical limitations set by his doctor. The defendants further noted that Mr. Rentrop was able to continue his job as a city councilman with his injuries earning an income of $6,000.00 a year.
The plaintiffs counter that when trial began on September 12, 2016, forty-seven months had passed since the accident. From the time of trial until the date that Mr. Rentrop would turn sixty-five years old, when he intended to retire, was a period of twenty-four months. The plaintiffs argue that because Mr. Rentrop worked as a school bus driver for St. Mary Parish School Board for over thirty-one years making approximately $2,500.00 a month, this amount multiplied by seventy-one months, totals $177,500.00. Therefore, the plaintiffs urge that the amount awarded by the jury is justified.
A plaintiff seeking damages for lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Tate v. Kenny, 2014-0265 (La. App. 1 Cir. 12/23/15), 186 So.3d 119, 129. The jury has broad discretion in assessing awards for lost wages, but there must be a factual basis in the record for the award. Id. Where there is no basis for a precise mathematical calculation of a lost wage claim, the trier of fact can award a reasonable amount of damages without abusing its discretion. Id. Factors to consider in fixing awards for loss of earning capacity include: age, life expectancy, work life expectancy, appropriate discount rate, the annual wage rate increase, prospects for rehabilitation, probable future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency. Lemings v. Sanasac, 2016-0052 (La. App. 1 Cir. 12/22/16), 209 So.3d 396, 399.
The record reflects that at the time of the trial, Mr. Rentrop was sixty-three years old and was only two years from retirement. Since the accident, Mr. Rentrop has been unable to work as a school bus driver and had to close his automotive business. Dr. Williams stated in his deposition that Mr. Rentrop's pain level was aggravated by increased daily activities. Dr. Williams further stated that he was doubtful that Mr. Rentrop would return to work after reaching maximum medical improvement in his back. Although contradictory testimony was offered at trial, the trier of fact is free to accept or reject the testimony expressed by any expert, in whole or in part. Ryan v. Zurich American Ins. Co., 2007-2312 (La. 7/1/08), 988 So.2d 214, 222. After reviewing the record, including Mr. Rentrop's work history and the testimony of Dr. Williams, we conclude that the jury did not abuse its discretion in awarding $177,500.00 for past, present, and future loss of income, as there is a factual basis in the record for such an award. This assignment lacks merit.
General Damages
The plaintiffs assign as error the $1,025,000.00 general damage award to Mr. Rentrop. The defendants argue that this amount is excessive in light of the facts of the instant matter.
General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Schwartzberg v. Guillory, 2016-0753 (La. App. 1 Cir. 2/17/17), 213 So.3d 1266, 1271. The primary objective of *370 general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury. Id. The trier of fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1 ; Id. The discretion vested in the trier of fact is "great," even vast, so that an appellate court should rarely disturb an award of general damages. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but, rather, to review the exercise of discretion by the trier of fact. Id. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier of fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Id. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should modify the award. Id.
The record reveals that prior to the accident, Mr. Rentrop was an active fifty-nine-year-old man, frequently enjoying outdoor activities and planning to retire at age sixty-five and travel the country with his wife. Mr. Rentrop testified that he had no pain in his back or neck prior to the accident. Mr. Rentrop submitted his medical records into evidence, which proved that he attended thirty-one physical therapy sessions prior to his two surgeries. Mr. Rentrop testified that although the two surgeries helped alleviate his pain, it is still not resolved. Mr. Rentrop testified that since the accident, he is unable to walk at a normal pace and has to walk with a cane because he has problems balancing. Mr. Rentrop further testified that his relationship with his family has changed since the accident, as he is no longer able to play with his grandchildren and his relationship with his wife has been affected as a result of his injuries sustained in the accident. Specifically, Mr. Rentrop stated at trial that he has "no desire, no drive, no stamina, no fortitude" since the accident.
Considering the record as a whole, including the medical evidence and testimony presented at trial, because Mr. Rentrop still has complaints of pain four years after the accident, we cannot say that the award constitutes an abuse of the vast discretion accorded to the trier of fact. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The jury was in a superior position to observe and review the demeanor of the witnesses and evaluate their credibility, and we must give great weight to their factual conclusions. See Crisler v. Paige One, Inc., 42,563 (La. App. 2 Cir. 1/9/08), 974 So.2d 125, 132. Thus, this assignment of error lacks merit.
Medical Expenses, Past, Present, and Future
The defendants assign as error the jury's award of $400,000.00 in medical expenses because they allege there was no evidence in the record to justify such an award. Specifically, the defendants argue that the record contains no testimony warranting that more probably than not, any future medical expenses would be required for Mr. Rentrop. The defendants rely on Basco v. Liberty Mut. Ins. Co., 2005-0143 (La. App. 3 Cir. 8/17/05), 909 So.2d 660, 668-69, which states that in meeting the burden of proof on the issue of future medical expenses, "the plaintiff must show that, more probably than not, these expenses will be incurred and must present *371 medical testimony that they are indicated and the probable cost of these expenses."
The plaintiffs counter that from the testimony presented at trial, it was more probable than not that Mr. Rentrop would have to undergo another surgery. However, the plaintiffs do not cite to anywhere in the record where this was stated. The plaintiffs further argue that the jury's award was proper because of Dr. William's video deposition, when opposing counsel brought up a past medical bill which was over $400,000.00. However, the record provides that only $150,000.00 in past medical expenses were admitted into the record.
In reviewing special damages,[6] such as medical expenses, there is a two-step process. See Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1118. There must be no reasonable basis for the jury's conclusions and the finding must be clearly wrong. Id. Therefore, we must review the evidence in the record and determine if the jury abused its discretion in finding that the special damage award of $400,000.00 in this matter will more probably than not be incurred by Mr. Rentrop.
Dr. Williams, Mr. Rentrop's treating physician, testified that no future surgeries were planned for Mr. Rentrop for his neck or back. Dr. Williams further stated that he had not sent Mr. Rentrop to a pain management doctor because with his progress he was hopeful that he could get off of his current medications. Dr. Foster corroborated Dr. Williams's testimony, stating that he did not anticipate any future surgeries for Mr. Rentrop and no surgeries had been recommended. Both doctors testified that Mr. Rentrop was doing well after both surgeries and his recovery was better than expected.
After reviewing the record in its entirety, it does not appear that Mr. Rentrop would more probably than not need surgery in the future. Future medical expenses must be established with some degree of certainty. Gaspard v. Southern Farm Bureau Cas. Ins. Co., 2013-0800 (La. App. 1 Cir. 9/24/14), 155 So.3d 24, 35-36. Additionally, there was no testimony presented at trial regarding a cost or exact value of the necessary present or future expenses for Mr. Rentrop. Thus, the plaintiffs have failed to meet their burden of proving that medical expenses will be necessary in the future. The only evidence in the record establishing an award of medical expenses to the plaintiffs was for past medical expenses totaling $150,000.00. For this reason, we amend the jury's award of past, present, and future medical expenses, reducing the award of $400,000.00 to $150,000.00.[7]
Challenge for Cause
Lastly, the defendants assign as error the trial court's denial of its challenge for cause of prospective jurors James Woodward and Dennis Taylor who had previously been represented by the plaintiffs' counsel. For this reason, the defendants argue that both jurors could not be fair and impartial.
Louisiana Code of Civil Procedure Article 1765(2) provides that a juror may be challenged for cause "[w]hen the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." Article 1765(3) further provides that a juror may also be challenged for cause "[w]hen the relations whether by ... employment, friendship, or enmity between the juror and any party or *372 his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict." A trial court has great discretion in ruling on challenges for cause and the appellate court should not disturb its ruling unless the voir dire[8] as a whole indicates an abuse of discretion. Bannerman v. Bishop, 28,382 (La. App. 2 Cir. 7/2/96), 688 So.2d 570, 572, writ denied, 96-2755 (La. 1/10/97), 685 So.2d 146. A prospective juror's friendship, acquaintance, or previous employment of an attorney on an unrelated matter does not necessitate the granting of a challenge for cause if the juror makes it clear that such a relationship would not affect his or her verdict. Raymond v. Government Employees Ins. Co., 2009-1327 (La. App. 3 Cir. 6/2/10), 40 So.3d 1179, 1184, writ denied, 2010-1569 (La. 10/8/10), 46 So.3d 1268.
We first note that Mr. Woodward became ill during trial and was dismissed and replaced by an alternate juror. Therefore, we need not address the arguments regarding him. Accordingly, the sole issue presented is whether the trial court erred in denying the defendant's challenge for cause of Mr. Taylor. During voir dire, Mr. Taylor stated that the plaintiffs' counsel had represented him and his wife; however, he could remain fair and impartial.
After reviewing the record as a whole, we have determined that there is no evidence in the record showing that the prior relationship between Mr. Taylor and the plaintiffs' counsel affected the jury verdict. Based on Mr. Taylor's response, this court cannot say that the trial court erred or abused its discretion in finding that Mr. Taylor could not be impartial in making a decision. A juror's relationship is only sufficient to disqualify him if it is reasonable to conclude that the relationship would influence his decision on the verdict. See State v. Lowdins, 2017-157 (La. App. 3 Cir. 10/4/17), 229 So.3d 547. Thus, we cannot say the trial court abused its discretion.
CONCLUSION
For these reasons, we affirm the trial court's judgment rendered in accordance with the jury's verdict, as well as its denial of the motion for JNOV or, alternatively, a MFNT. However, we amend the final judgment and reduce the jury's award of past, present, and future medical expenses of $400,000.00 to $150,000.00. Appeal costs are assessed equally against the defendants, Arch Insurance Company, Progressive Waste Solutions of LA, Inc., d/b/a SWDI, L.L.C., and Jermaine V. Harding, and the plaintiffs, John and Dawn Rentrop.
AMENDED IN PART; AFFIRMED IN PART AS AMENDED.

Dr. Williams believed that Mr. Rentrop had degenerative disc disease and spondylosis prior to the accident.

St. Mary Parish School Board adopted and incorporated in its entirety the brief filed by the plaintiffs. As such, reference to the plaintiffs include St. Mary Parish School Board's argument.

After the accident, Mr. Rentrop continued his job as a city council member for the city of Patterson earning $6,000.00 a year.

This court notes that the defendants appealed the December 22, 2016 judgment denying its motion for JNOV or MFNT. The denial of a motion for JNOV or MFNT is an interlocutory and non-appealable judgment. La. C.C.P. art. 1914. However, an appellate court may consider interlocutory judgments, such as the denial of a MFNT/JNOV, as part of an unrestricted appeal from a final judgment. Because the defendants' challenge of the trial court's denial of its MFNT/JNOV is part of the appeal from the final judgment, we may consider the issue on appeal. See GE Commercial Finance Business Property Corp. v. Louisiana Hospital Center, L.L.C., 2010-1838 (La. App. 1 Cir. 6/10/11), 69 So.3d 649, 653 n.4.

Louisiana Code of Civil Procedure article 1811(A)(2) provides that a MFNT may be joined with a JNOV request, or a new trial may be prayed for in the alternative.

Special damages are those which have a "ready market value," such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages. Kaiser v. Hardin, 2006-2092 (La. 4/11/07), 953 So.2d 802, 810.

There was no objection about Mr. Rentrop's past medical expenses totaling $150,000.00.

Voir dire examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Stacy, 96-0221 (La. 10/15/96), 680 So.2d 1175, 1178.