<u>NOT DESIGNATED FOR PUBLICATION</u>

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2023 CA 0806

GREGORY KILLEBREW

VERSUS

JOHN G. COOK, STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, AND PROGRESSIVE CASUALTY INSURANCE COMPANY

Judgment rendered: **APR 1 9 2024**

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2017-14716, Division I

The Honorable Reginald T. Badeaux, III, Judge Presiding

* * * * *

Eric A. Wright
Mario Sanchez
Daryl A. Gray
Raynique Keelen
Corrie R. Gallien, III
New Orleans, Louisiana
    and
Bradford H. Walker
Metairie, Louisiana

Darrin M. O'Connor
Ashley G. Haddad
Covington, Louisiana

Attorneys for Appellant
Gregory Killebrew

Attorneys for Appellees
State Farm Mutual
Automobile Insurance Company and
State Farm Fire and Casualty Company

* * * * *

BEFORE: WELCH, WOLFE, and STROMBERG, JJ.

**STROMBERG, J.**

In this personal injury tort suit, the plaintiff appeals from an adverse judgment dismissing his suit against the defendants with prejudice following a jury trial on causation and damages. For the reasons set forth herein, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On October 11, 2017, the plaintiff, Gregory Killebrew, filed suit against John G. Cook and Mr. Cook's automobile liability insurer, State Farm Mutual Automobile Insurance Company (State Farm Mutual).[1] He sought to recover damages arising from an automobile collision he was involved in on November 18, 2016, in Mandeville, Louisiana. Mr. Killebrew alleged that he was stopped in his vehicle at a red traffic control light, with Jett William stopped in a vehicle behind him. According to the petition, Mr. Cook's vehicle rear-ended Mr. William's vehicle, causing it to collide with Mr. Killebrew's vehicle, thereby injuring Mr. Killebrew.

On July 31, 2018, Mr. Killebrew, Mr. Cook, and State Farm Mutual entered into a "**STIPULATION OF LIABILITY AND INSURANCE COVERAGE.**" Pursuant to the stipulation, they agreed that Mr. Cook was the sole legal cause of the crash that was the basis of the litigation; that Mr. Killebrew had no comparative fault for the accident; that Mr. Cook's State Farm Mutual liability policy provided coverage up to its policy limits of $250,000 for damages to Mr. Killebrew from the accident; and that State Farm Fire and Casualty Company (State Farm Fire) issued a personal liability umbrella policy to Mr. Cook, which provided coverage up to its policy limits of $2,000,000 that was in effect on November 18, 2016. Mr.

---

[1] Mr. Killebrew also named his underinsured/uninsured motorists insurer as a defendant in his petition. In its answer, Progressive Security Insurance Company stated that Mr. Killebrew incorrectly referred to it as Progressive Casualty Insurance Company in his petition. On March 14, 2018, on Mr. Killebrew's motion, the district court signed a partial motion to dismiss Progressive Security Insurance Company without prejudice from the suit.

Killebrew agreed to dismiss Mr. Cook from the proceedings with prejudice and from any excess judgment above the policy limits. Mr. Killebrew was permitted to proceed solely against both State Farm Mutual and State Farm Fire (hereinafter referred to collectively as "State Farm"). Pursuant to the stipulation, the district court signed Mr. Killebrew's motion to voluntarily dismiss Mr. Cook from the suit with prejudice. Mr. Killebrew then filed a motion to amend his petition to add State Farm Fire as a defendant, which the district court granted.

Trial before a jury proceeded on the issue of causation and damages. On January 12, 2023, the jury returned a unanimous verdict, finding that Mr. Killebrew failed to establish, more probably than not, that the November 2016 motor vehicle accident either caused and/or aggravated his injuries. In accordance with the jury verdict, the district court signed a judgment on January 26, 2023, in favor of State Farm, dismissing Mr. Killebrew's cause of action with prejudice.

On February 2, 2023, Mr. Killebrew filed a motion for judgment notwithstanding the verdict (JNOV), or alternatively, a motion for new trial, which the district court denied on February 18, 2023. Mr. Killebrew then filed a motion for appeal from the January 26, 2023 judgment, which was granted by the district court.

## IMPROPER CLOSING ARGUMENT
## (ASSIGNMENT OF ERROR NUMBER ONE)

In Mr. Killebrew's first assignment of error, he contends that the district court erred in permitting defense counsel to make impermissible statements during closing argument. More specifically, Mr. Killebrew complains about defense counsel's statements pertaining to Mr. Cook, the different dates Mr. Killebrew's medical records contained for the accident, and Mr. Killebrew's expert orthopedic surgeon, Dr. Joseph Zavatsky. Mr. Killebrew also raised the issue regarding

3

statements in defense counsel's closing argument in his alternative motion for new trial, which was denied by the district court.

The propriety of argument in a civil jury case must be determined in light of the facts of the particular matter, the conduct and atmosphere of that particular trial, and the arguments of opposing counsel. **Caballero v. Catholic Mutual Insurance Co.**, 97-1458 (La. App. 1 Cir. 6/29/98), 718 So.2d 511, 514, writ denied, 98-2498 (La. 11/25/98), 729 So.2d 567. Inflammatory remarks made by counsel in argument which are calculated to appeal to the passions and prejudices of a jury are improper. See **Ogletree v. Willis-Knighton Memorial Hospital, Inc.**, 530 So.2d 1175, 1181 (La. App. 2 Cir.), writ denied, 532 So.2d 133 (La. 1988). Counsel should confine the argument to the evidence admitted and the inferences that may be properly drawn from it. **Ogletree**, 530 So.2d at 1181. The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law. **Rentrop v. Arch Insurance Co.**, 2017-0635 (La. App. 1 Cir. 12/29/17), 241 So.3d 357, 366. This test is balanced against the well-settled jurisprudence that counsel has great latitude in argument before a jury. **Rentrop**, 241 So.3d at 366. This latitude is subject to regulation and control by the court, which has a duty to confine argument within the proper bounds. **Rentrop**, 241 So.3d at 366. Thus, the determination of whether actual prejudice has occurred from remarks made in argument lies within the sound discretion of the district court, and this decision will not be overturned on appeal absent an abuse of that discretion. **Rentrop**, 241 So.3d at 366.

As to defense counsel's statements about Mr. Cook in his closing argument, defense counsel remarked that he kept investigating the case because he had met with and "got to know" Mr. Cook. Mr. Killebrew's counsel then objected on the basis that Mr. Cook, who had died prior to the trial, was no longer a party to the suit. Defense counsel responded that he made the statement because Mr.

4

Killebrew's counsel in his closing argument had commented about State Farm's responsibility for Mr. Cook's actions. The district court overruled Mr. Killebrew's counsel's objection. Defense counsel then stated that Mr. Cook did not want the case to be settled, whereupon Mr. Killebrew's counsel again objected. The district court sustained the objection, and defense counsel continued with his closing argument. Mr. Killebrew's counsel did not ask the court for a mistrial or for further corrective action, such as an instruction, at the time it could have been done.

While defense counsel's statement that Mr. Cook did not want the case settled was not based on any evidence introduced at trial, defense counsel made the statement to rebut the inference from Mr. Killebrew's counsel's statements that Mr. Cook in paying his insurance premiums and entering into the stipulation intended that State Farm would pay Mr. Killebrew's claims. Mr. Killebrew contends that the statement was prejudicial because it contradicted the parties' stipulation. However, while the stipulation did establish that Mr. Cook was the sole legal cause of the November 18, 2016 accident and that the dismissal of Mr. Cook should not be used as a defense to State Farm's liability for the accident, the parties did not stipulate that Mr. Cook or the accident caused or aggravated Mr. Killebrew's injuries. Therefore, defense counsel's statement did not contradict the stipulation.

As to defense counsel's statements about Dr. Zavatsky, Mr. Killebrew complains that defense counsel stated that Dr. Zavatsky owned a private jet to suggest he was "a hired gun making a fortune" testifying on behalf of personal injury patients. Before stating that Dr. Zavatsky had offices in Tampa, Florida, and in Metairie, Louisiana, and that he travelled between them using a private jet, defense counsel referred to Mr. Killebrew's counsel's statement in his closing argument that Dr. Everett Robert, the defense expert, was a "high paid expert" and

made "a lot of money as a doctor." Defense counsel also stated that doctors "on both sides" were expensive. Mr. Killebrew's counsel did not object to any of these statements, and in his rebuttal, stated that he was not aware of Dr. Zavatsky having a private jet and that Dr. Zavatsky did not testify to such. Failure to object constitutes a waiver of the right to complain of the argument on appeal. **Temple v. Liberty Mutual Insurance Co.**, 330 So.2d 891, 894 (La. 1976). Because Mr. Killebrew's counsel did not object, we will not further consider his contentions as to defense counsel's remarks about Dr. Zavatsky.

Mr. Killebrew also contends that defense counsel's comments that the medical records did not give the date of the accident as November 18, 2016, but as November 16, 2016, or November 22, 2016, were improper because they contradicted the stipulation. Defense counsel stated that the different dates showed that Mr. Killebrew could not meet his burden of proving when his injuries or the aggravation of his injuries actually occurred so as to determine if they were caused by the accident. Mr. Killebrew's counsel did not object to these statements, and he addressed the issue of the different dates in his rebuttal. As earlier noted, failure to object constitutes a waiver of the right to complain of the argument on appeal. **Temple**, 330 So.2d at 894.

Moreover, any allegedly prejudicial inappropriate remarks of defense counsel were subject to corrective measures. The district court instructed the jury that it was to deliberate and make its conclusions based only on the evidence, which included the stipulated facts, witnesses' testimony, documents admitted into evidence, and "any fair inferences and reasonable conclusions" which the jury could draw from the evidence submitted to it. The district court further instructed the jury that the arguments of counsel were not evidence. See **Rentrop**, 241 So.3d at 366. These instructions served to counteract the possible adverse effect of defense counsel's argument. The district court has broad discretion in controlling

6

the scope of counsels' arguments, and the district court was not thoroughly convinced that defense counsel's statements improperly influenced the jury and contributed to the verdict. See **Ogletree**, 530 So.2d at 1181. The district court is in a better position than an appellate court to determine the possible prejudicial effects resulting from counsel's argument before a jury. **Rentrop**, 241 So.3d at 366. Thus, the district court's refusal to grant State Farm's motion for new trial or JNOV on the basis of any possible impermissible statements should be accorded great weight. See **Rentrop**, 241 So.3d at 366. For the foregoing reasons, this assignment of error lacks merit.[2]

## FAILURE TO STRIKE JUROR
## (ASSIGNMENT OF ERROR NUMBER TWO)

In his second assignment of error, Mr. Killebrew contends that the district court erred in not striking juror number one because he alleges the juror exhibited clear bias in favor of the defense, which deprived him of a fair trial. Specifically, after the jury had been sworn in and the district court had given the jurors general instructions and then excused the jury, Mr. Killebrew's counsel complained to the district court about juror number one. Mr. Killebrew's counsel informed the district court that juror number one "flagged [defense counsel] down" after the juror saw that defense counsel had left his glasses on a podium or the court reporter's desk. Co-counsel for the defense then picked up the glasses. Mr. Killebrew's counsel asked the district court to strike the juror, and the district court denied the request, stating that the juror "was just trying to be helpful." The

---

[2] In his reply brief, Mr. Killebrew contends that the jury charges and the jury interrogatory were confusing because the jury interrogatory asked the jury if it found that it was "more probable than not that the accident of November 18, 2016 either caused and/or aggravated [the] injuries of [Mr. Killebrew]?" However, Mr. Killebrew did not object to the jury instructions or the interrogatory, nor did he assign this as error on appeal; thus, we will not consider this contention. See **Travis v. Spitale's Bar, Inc.**, 2012-1366 (La. App. 1 Cir. 8/14/13), 122 So.3d 1118, 1134, writs denied, 2013-2409, 2013-2447 (La. 1/10/14), 130 So.3d 327, 329; **Jordan v. Intercontinental Bulktank Corp.**, 621 So.2d 1141, 1155 (La. App. 1 Cir.), writs denied, 623 So.2d 1335, 1336 (La. 1993).

district court then stated that it would make clear that jurors and counsel should not communicate with each other. The district court was then adjourned for the day.

When the trial resumed on the next day, the district court began by addressing the jury as follows:

> I want to start by letting you know that if you pass us in the hallway, either myself or the lawyers, don't expect more than a polite nod of acknowledgement. We can't even discuss the weather with you. Any kind of conversation can call into question the partiality of the jurors. And I don't want to have to do this trial over.

Additionally, Mr. Killebrew alleges that, throughout the trial, juror number one was observed steadily taking notes when defense counsel spoke, but when his counsel spoke or examined a witness, juror number one did not look at his counsel, take any notes, or appear to be paying attention to the proceedings. Mr. Killebrew also raised the issue regarding juror number one in his motion for judgment notwithstanding the verdict, and, alternatively, motion for new trial.

Louisiana jurisprudence concerning juror or jury misconduct reveals that the courts of this state have been reluctant to set aside jury verdicts based upon allegations of improper behavior. **In re Medical Review Panel ex rel. Lorraine,** 2014-1428 (La. App. 1 Cir. 1/19/16), 2016 WL 228166, *5 (unpublished), writ denied sub nom., **In re Medical Review Panel for the Claim of Lorraine,** 2016-1308 (La. 10/28/16), 208 So.3d 888; **Perkins v. Allstate Insurance Co.,** 2005-2676 (La. App. 1 Cir. 11/3/06), 950 So.2d 850, 853. The party seeking a new trial based on jury misconduct must prove that the level of behavior was of such a grievous nature as to preclude the impartial administration of justice. **Lorraine,** 2016 WL 228166 at *5. This is a heavy burden to overcome. **Lorraine,** 2016 WL 228166 at *5. Moreover, the law does not favor a multiplicity of litigation; a litigant having been afforded a day in court will not be granted a second opportunity in the absence of good and compelling reasons. **Lorraine,** 2016 WL 228166 at *5.

8

A decision to deny a motion for new trial based upon jury misconduct is reviewed pursuant to an abuse of discretion standard. **Brown v. Hudson**, 96-2087 (La. App. 1 Cir. 9/19/97), 700 So.2d 932, 935, writ denied, 97-2623 (La. 1/9/98), 705 So.2d 1103, cert. denied, 524 U.S. 916, 118 S.Ct. 2297, 141 L.Ed.2d 157 (1998). Louisiana Code of Civil Procedure article 1972 sets forth the peremptory grounds for a new trial and provides in pertinent part that "[a] new trial shall be granted, upon contradictory motion of any party, in the following cases: . . . (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done." Improper behavior by a juror or jury is not defined and must be determined by the facts and circumstances of each particular case. **Brown**, 700 So.2d at 935.

We have thoroughly reviewed the record before us and do not find any abuse of discretion in the district court's denial of Mr. Killebrew's counsel's motion to strike juror number one. Juror number one's action in signaling defense counsel that he left his glasses does not show actual bias or grievous misconduct. Moreover, even if Mr. Killebrew's allegations about juror number one taking notes and appearing to pay more attention to defense counsel are true, these actions do not demonstrate either actual bias during the trial or grievous misconduct. Accordingly, Mr. Killebrew's second assignment of error lacks merit.

**DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR ALTERNATIVELY, MOTION FOR NEW TRIAL (ASSIGNMENT OF ERROR NUMBER THREE)**

In his third assignment of error, Mr. Killebrew contended that the district court erred in denying his motion for a JNOV pursuant to La. C.C.P. art. 1811 because the evidence in the case pointed so strongly and overwhelmingly in his favor that no reasonable person could have concluded that (1) the accident in this case did not occur on November 18, 2016; (2) that his back and shoulder injuries were not aggravated due to the accident; or (3) that his neck injury was not caused

9

by the accident. Alternatively, Mr. Killebrew sought a new trial pursuant to La. C.C.P. arts. 1811(A)(2), 1972, and 1973 on the basis that defense counsel confused the jury by making misleading statements based on facts not in evidence and facts contrary to stipulated facts and/or that one member of the jury behaved so improperly that impartial justice could not have been done.[3]

A JNOV is a procedural device authorized by La. C.C.P. art. 1811 by which the district court may modify the jury's finding of fault or damages, or both, to correct a legally erroneous jury verdict. See La. C.C.P. art. 1811(F); **Crawford v. Shelter General Insurance Co.**, 2020-0494 (La. App. 1 Cir. 7/28/21), 2021 WL 3185342, *6 (unpublished), writ denied, 2021-01665 (La. 1/12/22), 330 So.3d 611. A motion for new trial may be joined with a motion for a JNOV, or a new trial may be prayed for in the alternative. La. C.C.P. art. 1811(A)(2). A JNOV is warranted when the facts and reasonable inferences point so strongly and overwhelmingly in favor of the moving party that the court believes that reasonable jurors could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. **Crawford**, 2021 WL 3185342 at *6. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. **Crawford**, 2021 WL 3185342 at *6. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. **Crawford**, 2021 WL 3185342 at *6. When the district court denies a JNOV, the appellate court simply reviews the record to determine whether there

---

[3] In addition to provisions based on the discovery of new evidence and juror misconduct, La. C.C.P. art. 1972 provides that a new trial "shall be granted, upon contradictory motion of any party, ... (1) When the verdict or judgment appears clearly contrary to the law and the evidence." Louisiana Code of Civil Procedure article 1973 states, "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

is legal error or whether the trier of fact committed manifest error. **Crawford,** 2021 WL 3185342 at *6.

The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. **Jackson v. Wise,** 2017-1062 (La. App. 1 Cir. 4/13/18), 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914.

We note that State Farm raises a procedural issue regarding this court's review of the denial of the motion for JNOV and the motion for new trial. It argues that because Mr. Killebrew's motion and order for his appeal referred only to the judgment dismissing his suit with prejudice, he is not entitled to raise on appeal the denial of the motion for JNOV or the motion for new trial. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Landry v. Leonard J. Chabert Medical Center,** 2002-1559 (La. App. 1 Cir. 5/14/03), 858 So.2d 454, 461 n.4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So.2d 761. Thus, the interlocutory denial of a motion for JNOV or a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case. See **Moran v. G & G Construction,** 2003-2447 (La. App. 1 Cir. 10/29/04), 897 So.2d 75, 83 n.4, writ denied, 2004-2901 (La. 2/25/05), 894 So.2d 1148.

Mr. Killebrew sought damages at trial for the aggravation of prior back and shoulder injuries and for an injury to his neck. Mr. Killebrew testified at trial and called Dr. Zavatsky, Dr. Richard Texada, Dr. Ashley Lastrapes, and his daughter, Cassie Killebrew, as witnesses. State Farm's witnesses were Dr. Ralph Katz and Dr. Robert. Both parties introduced Mr. Killebrew's medical records into evidence.

11

Mr. Killebrew, who was fifty-seven years old when the motor vehicle accident occurred, testified about his medical history prior to the accident. Mr. Killebrew had been treated for left shoulder pain since 2014 and had been diagnosed with rotator cuff impingement, tendinitis, and bursitis before the accident. Moreover, he had received an injection in his shoulders on the morning of the accident due to his left shoulder pain. Prior to the accident, Mr. Killebrew also was treated for lower back pain. Mr. Killebrew and his daughter both testified that he did not complain about neck pain before the accident.

When the accident occurred, Mr. Killebrew testified that he did not strike anything in his car, the air bags did not deploy, he was not in pain immediately after the accident, and he drove Mr. Cook home in his car. However, in the medical history given to Dr. Gordon, a chiropractor Mr. Killebrew saw shortly after the accident, Mr. Killebrew stated that he "experienced immediate pain in his cervical spine, thoracic spine, lumbar spine and left shoulder regions."

After the accident, Mr. Killebrew continued to undergo shoulder injections and ultimately underwent a left shoulder arthroscopy performed by Dr. Texada, an orthopedic surgeon, on April 13, 2017. Dr. Texada testified that it was more probable than not that Mr. Killebrew's shoulder injury was aggravated by the accident. On cross-examination, Dr. Texada admitted he had not reviewed Mr. Killebrew's medical records from before the accident. However, State Farm's expert, Dr. Ralph Katz, an orthopedic surgeon, reviewed Mr. Killebrew's medical records from before and after the accident, and testified that Mr. Killebrew had tendinitis and a strong possibility of a rotator cuff tear in his left shoulder before the accident. Dr. Katz also testified that he believed that Mr. Killebrew would have continued to have ongoing problems with his left shoulder, more probably than not, regardless of the accident, and that it would be inappropriate to solely relate the shoulder surgery to the accident.

12

As to his spine, after the accident, Mr. Killebrew underwent injections for his neck, lower back, and sacroiliac joints, and ultimately a cervical fusion for his neck was performed by Dr. Zavatsky, an orthopedic spine surgeon, on October 5, 2020. Dr. Zavatsky testified that he first saw Mr. Killebrew on September 4, 2018. Dr. Zavatsky further testified that Mr. Killebrew said that he was in a motor vehicle accident on November 22, 2016, and that his complaints of neck pain, headaches, bilateral arm pain and numbness, and lower back pain, among other things, were due to that accident. According to Dr. Zavatsky, Mr. Killebrew also said he had some aches and pains prior to the accident, but that they worsened after the accident. Mr. Killebrew told Dr. Zavatsky that his neck pain was new.

Dr. Zavatsky reviewed Mr. Killebrew MRIs performed on January 16, 2017, and January 20, 2017, which showed disc herniations at C5-6, C6-7, and disc bulges at L2-3, L3-4, and L4-5. When Dr. Zavatsky was asked if he believed it was more likely than not that all of the treatment he performed on Mr. Killebrew was caused by the accident, he said "I do." Dr. Zavatsky testified that he believed the neck injury was due to the accident because he was unaware of findings on the MRIs, in Mr. Killebrew's history of complaints, or in the office visit notes that showed Mr. Killebrew's symptoms started before the accident. When asked about the date of the accident set forth in the medical records, which was November 21, 2016, Dr. Zavatsky did not know if the date was obtained from a medical note or from a form filled out by Mr. Killebrew. Dr. Zavatsky testified that his opinion would remain the same whether the date of the accident was November 18, 2016, or November 21, 2016. On cross-examination, Dr. Zavatsky admitted that in forming his opinion on causation, he relied on the patient's history being accurate.

Mr. Killebrew was examined by Dr. Everett Robert, State Farm's expert neurosurgeon, on August 24, 2018. Dr. Robert also reviewed Mr. Killebrew's medical records from before and after the accident. Dr. Robert testified that in a

13

medical record from Dr. Rex Houser, a neurologist whom Mr. Killebrew had seen on September 12, 2016, prior to the accident, Dr. Houser diagnosed Mr. Killebrew with both neck pain and lower back pain. However, we note that Mr. Killebrew testified that he did not complain of neck pain to Dr. Houser. Dr. Robert testified that he believed that Mr. Killebrew's cervical fusion was not related to the accident, but was due to a chronic degenerative condition causing progressive cervical spine stenosis and weakness based on Mr. Killebrew's MRIs. Dr. Robert opined that Mr. Killebrew might have sustained either a soft tissue sprain or strain in his cervical lumbar spine from the accident, but that the sacroiliac and lumbar injections were not appropriate or related to the accident. Dr. Robert did not believe that Mr. Killebrew had sustained any anatomical injury to his cervical or lumbar spine in the accident.

State Farm pointed out information in Mr. Killebrew's medical records regarding his prior medical history that was pertinent to the issues he had after the accident. In August of 2016, Mr. Killebrew visited a physician due to his musculoskeletal pain episodes, and the office notes from that visit stated that Mr. Killebrew had been diagnosed with rheumatoid arthritis. Office visit notes from another physician who saw Mr. Killebrew in September of 2016 stated that his assessment/impression included rheumatoid arthritis and osteoarthritis. Mr. Killebrew was also prescribed Dilaudid as pain medication prior to the accident. Additionally, although at trial Mr. Killebrew denied performing manual labor prior to the accident, the office notes from Mr. Killebrew's September 19, 2016 appointment with a physician include the statement that Mr. Killebrew started to renovate houses and performed a "lot of manual labor/heavy lifting. Around this time is when he noted that he was having increased joint pain, stiffness in several joints."

14

Accordingly, we find that the district court did not err in denying Mr. Killebrew's post-trial motions because there was a reasonable factual basis for the jury's finding that he did not sustain either any injury or aggravation to a preexisting injury due to the accident. While Mr. Killebrew contended that he sustained injuries to his neck, left shoulder, and lower back, the jury could reasonably conclude that Mr. Killebrew was either not injured in the accident or did not have his previous injuries aggravated based on the testimony of Dr. Robert and Dr. Katz, together with the history Mr. Killebrew provided to his treating physicians, which omitted his prior complaints and treatment for lower back and shoulder pain as set forth in his extensive medical records. Thus, the district court's denial of Mr. Killebrew's motion for JNOV and/or motion for new trial was not manifestly erroneous, and Mr. Killebrew's third assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the January 26, 2023 judgment in favor of State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, dismissing the cause of action of Gregory Killebrew with prejudice, is affirmed. Costs of this appeal are to be paid by Gregory Killebrew.

**AFFIRMED.**