CALLOWAY, J.
|2In this personal injury case, the defendants challenge the damages awarded by the trial court to the plaintiff following a bench trial.
FACTS AND PROCEDURAL HISTORY
This case involves a traffic accident, and the facts regarding the collision are undisputed. The accident occurred on April 25, 2013, when the Jeep Wrangler owned and operated by the plaintiff, Jay Schwartzberg, struck an armored van operated by the defendant, Miller Guillory, and owned by his employer, Garda CL Southeast, Inc.[2] Mr. Guillory was driving the armored vehicle westbound on Government Street in Baton Rouge, while in the course and scope of his employment with Garda CL Southeast, Inc. Mr. Guillory was attempting to make a left turn into the parking lot of a commercial shopping center when Mr. Schwartzberg’s vehicle, trav-elling eastbound, struck the back comer of the armored vehicle. At the time of the accident, Mr. Schwartzberg had the right of way, and Mr. Guillory had a legal duty to yield that right of way to Mr. Schwartz-berg’s vehicle.[3]
Mr. Schwartzberg filed the instant suit against Mr. Guillory and Garda CL Southeast, Inc., seeking damages for the aggravation of a pre-existing neck injury allegedly sustained as a result of the automobile accident. A bench trial was conducted on November 20, 2015, on the issue of damages.[4] Mr. Schwartzberg *1270 stipulated that his damages, exclusive of interest and court costs, did not exceed $50,000.00. Following trial, the trial court issued reasons for judgment and signed a final judgment on January 28, 2016, in favor of Mr. Schwartzberg and against the defendants in solido, awarding |3Mr. Schwartzberg $49,999.99 in general and special damages, plus legal interest from the date of judicial demand until paid, as well as all costs of the proceedings.
The defendants now appeal, contending that the trial court erred in the amount of general and special damages awarded to the plaintiff. Specifically, the defendants assert two assignments of error. First, the defendants argue the trial court erred in finding that the accident caused an aggravation of Mr. Schwartzberg’s pre-existing neck injury for eleven months. Second, the defendants contend the trial court erred in the amount of general and special damages awarded to Mr. Schwartzberg by relying on the testimony of Mr. Schwartzberg’s treating physician, which the defendants argue is inconsistent with medical records and other evidence, including Mr. Schwartzberg’s own admissions.
LAW AND DISCUSSION
The defendants argue that the damage award is abusively high because Mr. Schwartzberg, who suffered neck pain pri- or to the accident at issue, failed to carry his burden of proof that he suffered an eleven-month aggravation of his pre-exist-ing neck injury. The defendants contend Mr. Schwartzberg failed to prove that he suffered any aggravation of this pre-exist-ing injury beyond four months after the accident, based on the medical records and expert medical testimony introduced at trial. The defendants contend the trial court erred in relying on the expert testimony of the plaintiffs treating physician, through which Mr. Schwartzberg attempted to establish the duration of the aggravation of his pre-existing neck injury, but which was inconsistent and interdicted by his own medical records and other evidence introduced by Mr. Schwartzberg at trial.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident that caused the injury. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 433 (La. 1991). Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim’s current status must also be established. Proof must be by a preponderance of the evidence. The test for determining the causal relationship is whether the plaintiff proved, through medical and lay testimony, that it is more probable than not that the subsequent injuries were caused by the accident. Bennett v. Louisiana Farm, Bureau Cas. Ins. Co., 43,216 (La.App. 2 Cir. 4/30/08), 983 So.2d 966, 972.
A defendant in a personal injury case takes the victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor’s conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Robinson v. Tolbert, 40,488 (La.App. 2 Cir. 1/20/06), 920 So.2d 346, 348. The “eggshell plaintiff’ is required to establish a causal link between the tortious conduct and the aggravation of his pre-existing condition. Bienemann v. State Farm Mut. Auto. Ins. Co., 2008-1045 (La.App. 3 Cir. 2/4/09), 3 So.3d 621, 623.
Although expert medical testimony is indispensable in some cases to prove or disprove causation, a finding on the issue of causation is not necessarily contingent upon the substance of expert medical-testimony. Greening v. Bell, 28,689 (La.App. 2 *1271 Cir. 9/25/96), 681 So.2d 36, 38. Expert medical testimony is only required when the conclusion regarding medical causation is one that is not within common knowledge. Newsome v. New Orleans Saints, 2008-311 (La.App. 5 Cir. 10/14/08), 996 So.2d 637, 640. Credibility determinations, including evaluating the testimony of expert witnesses, are factual findings governed by the manifest error standard of review. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-0201 (La. 10/19/99), 748 So.2d 417, 421. Simply stated, an appellate court is required to give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations' of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Dixon v. Travelers Ins. Co., 2002-1364 (La.App. 4 Cir. 4/2/03), 842 So.2d 478, 485, writ denied, 2003-1482 (La. 9/26/03), 854 So.2d 366.
“General damages” involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La. App. 1 Cir.), writs denied, 605 So.2d 1373, 1374 (La. 1992). The primary objective of general damages is to restore the party in as near .a fashion as possible to the state he was in at the time immediately preceding injury. Daigle v. U.S. Fidelity and Guar. Ins. Co., 94-0304 (La.App. 1 Cir. 5/5/95), 655 So.2d 431,437.
Thus, in determining the amount of general damages to be awarded, the trial court, as the trier of fact, had to determine whether Mr. Schwartzberg met his burden of proof, by a preponderance of the evidence, that he suffered aggravation to his pre-existing injuries as a result of the accident, as well as the duration of the aggravation of his injuries. Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377 (La.App. 1 Cir. 11/8/96), 685 So.2d 163, 172, writ denied, 97-0493 (La. 4/4/97), 692 So.2d 421. The discretion vested in the trier of fact is “great,” even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court' in reviewing general damages is not to decide what it considers to be an appropriate award but, rather, to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier-of fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. Youn, 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the- effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn, 623 So.2d at 1261.
The nature, relative severity, and bodily extent of injuries are qualitative factors that must first be considered by the trier of fact in awarding general damages. The duration of a plaintiffs injury symptoms and the duration of treatment are relevant ^quantitative factors that *1272 must also be taken into account. See Gillmer v. Parish Sterling Stuckey, 2009-0901 (La.App. 1 Cir. 12/23/09), 30 So.3d 782, 788; Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La.App. 1 Cir. 11/10/94), 647 So.2d 351, 357. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate or excessive. See Theriot, 625 So.2d at 1340. And, it is only after such a threshold determination of an abuse of discretion that the appellate court should examine prior awards for similar injuries to modify the award within the range of reasonable discretion. See Reck v. Stevens, 373 So.2d 498, 500-01 (La. 1979); Coco v. Winston Indus., Inc., 341 So.2d 332, 335-36 (La. 1976).
“Special damages” are those which must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty. Some special damages, such as medical and lost wages, are easily measured. McGee v. A C And S, Inc., 2005-1036 (La. 7/10/06), 933 So.2d 770, 774; Wainwright, 774, So.2d at 74. In reviewing a fact-finder’s conclusion with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole; there must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Guillory v. Ins. Co. of North America, 96-1084 (La. 4/8/97), 692 So.2d 1029, 1032.
The record establishes that Mr. Schwartzberg was a twenty-three year old law student at the time of the accident. Before the accident at issue here, Mr. Schwartzberg suffered from anxiety, attention-deficit hyperactivity disorder, bulging of the C3-C4 and C6-C7 intervertebral discs, and chronic neck pain. Mr. Schwartzberg had been involved in several motor vehicle accidents prior to the April 25th accident at issue, the most recent of which occurred on June 7, 2012.
All of Mr. Schwartzberg’s medical records were introduced at trial. Prior to the April 25th accident, Mr. Schwartzberg treated with Metropolitan Health Group, Novamed Surgical Center of Baton Rouge, and his primary physician, Dr. Billy May with the Family Clinic, for his chronic neck pain and other injuries predating the April 25th |7accident. Two days before the April 25th accident, Mr. Schwartzberg received an epidural steroid injection to manage his chronic neck pain.
Immediately following the accident, Mr. Schwartzberg sought treatment at the emergency room at Our Lady of the Lake Regional Medical Center. The notes from the emergency room indicate that Mr. Schwartzberg stated he had been injured in an automobile accident and was experiencing neck pain and a tingling sensation in his left upper extremity. The emergency room records also include notes that Mr. Schwartzberg suffered from chronic neck pain and had just received an epidural steroid injection. Mr. Schwartzberg rated his pain at a 10 on a 10-point scale.
The same day as the accident, Mr. Schwartzberg was also treated by Dr. Keith R. Mack at the Metropolitan Health Group. Dr. Mack noted Mr. Schwartzberg was experiencing headaches, neck pain, upper back pain, muscle spasms, and a radicular pain radiating down his right am. Dr. Mack noted that Mr. Schwartz-berg had previously experienced a decrease in pain as a result of his prior treatment at the Metropolitan Group and the epidural steroid injection; however, now Mr. Schwartzberg rated his pain at a 10 on a 10-point scale. Dr. Mack prescribed several medications and recommended Mr. Schwartzberg undergo physical therapy twice a week.
*1273 The only two witnesses who testified at trial were Dr. May and Mr. Schwartzberg. Mr. Schwartzberg testified that as a result of the April 25th accident, he experienced neck pain and sought medical treatment from the day of the accident all the way through a subsequent accident he had on March 12, 2014.
Dr. May testified that he saw Mr. Schwartzberg two weeks after the accident, complaining of headaches and neck pain. Dr. May testified that as a result of the accident, Mr. Schwartzberg had inflamed facet joints and was experiencing muscle spasms. Dr. May’s testimony and notes indicate that it was his expert medical opinion that the April 25th accident aggravated Mr. Schwartzberg’s previous injuries. Dr. May stated that had the accident not occurred, the epidural steroid injection Mr. Schwartzberg received two days before the accident would have given him relief for a considerable period of time. After reviewing an MRI of Mr. Schwartzberg’s spine, Dr. May Isprescribed a treatment protocol called Vax-D, which consists of approximately twenty to twenty-four treatments wherein a computerized decompression table physically separates the vertebral body from a spinal disc and creates a negative intra-discal pressure allowing the disc to be pulled back toward its center position away from the herniated or protruding position to try to decompress off the nerve. Mr. Schwartzberg underwent seventeen sessions of Vax-D from May 13 through July 13, 2013.
As the treating physician for Mr. Schwartzberg’s neck pain, Dr. May established the eleven month duration of the aggravation of Mr. Schwartzberg’s neck injury. Dr. May testified that had the April 25th accident not occurred, Mr. Schwartz-berg would have continued to have chronic neck pain that would be intermittent with some exacerbations; however, Dr. May testified that all of the treatment Mr. Schwartzberg received from April 25, 2013, through March 12, 2014—the date of a subsequent automobile accident in which Mr. Schwartzberg was involved—was for the aggravation of his previous neck injury sustained in the April 25th accident.
In his reasons for judgment, the trial court stated:
After review of the medical testimony and other evidence submitted, this court finds that it is more probable than not that the April 25, 2013 accident was the legal cause of plaintiffs complaints and injuries....
Two days prior to the accident sued upon, the plaintiff received a cervical epidural steroid injection for a previous neck condition. As a result of this accident, he claims that his neck condition was exacerbated and that he injured his right shoulder and experienced headaches and nose bleed. Plaintiff claims, and he testified that, prior to this accident his neck condition was much better, but that immediately after the accident!,] his neck pain got worse. Plaintiff testified that he immediately, at the scene of this accident, felt the pain in his neck that was coupled with nerve sensations into his right shoulder, arm and fingers.
Plaintiff did not deny being in previous accidents. Plaintiff was in a previous accident and another accident after the one that is the subject of this lawsuit. He was in an accident in June 2012 where he suffered an injury to this neck. He was in another accident in March of 2014 where a person ran a stop sign and hit him, but the plaintiff does not claim that he suffered any injury in that accident. After plaintiff was released from OLOL, he followed up with his primary care physician, Dr. Billy May, Dr. Mack at the Metropolitan Health Group, Dr. *1274 Najeeb Thomas at the | ¡Southern Brain and Spine Center, Dr. Elizabeth Russo-Stringer at the Spine Diagnostic and Pain Treatment Center, and NO-VAMED Surgical Center, and he also underwent physical therapy and message [sic] therapy.
Dr. Billy May, who was tendered and accepted as an expert in the field of family medicine[,] testified at trial and the records of the remaining doctors that treated the plaintiff were also submitted at trial. Dr. May testified that there was no doubt that the plaintiff was making steady progress and the condition in his neck was improving before this accident. He also discounted that [sic] fact that plaintiff complained of experiencing an 8 out of 10 level of pain just prior to this accident at Dr. Mack’s office, noting that his condition causes some days to be worse than others depending on his activities. Dr. May opined that the plaintiff definitely experienced and [sic] aggravation of his preexisting condition and that the aggravation made his condition worse. One indicator he pointed to was the fact that prior to the accident the plaintiff was not experiencing muscle spasm and the day after the accident Dr. Mack noted muscle spasm.
Based upon the evidence presented, there is no doubt that the accident involved a pretty severe impact between the plaintiffs car and the defendant’s heavy armored truck and the medical evidence establishes more probable than not the plaintiffs health was exacerbated by the accident....
Based on our review of the record, we cannot say the trial court manifestly erred in accepting and relying on the testimony of Mr. Schwartzberg and the expert medical testimony of Dr. May to conclude that Mr. Schwartzberg proved, by a preponderance of the evidence, that the accident at issue caused an eleven-month aggravation of his preexisting neck injury. The trial court was in a superior position to observe and review the demeanor of the witnesses and evaluate their credibility, and we must give great weight to his factual conclusions. See Sportsman Store of Lake Charles, Inc., 748 So.2d at 421; see also Dixon, 842 So.2d at 485.
The trial court awarded Mr. Schwartzberg general damages in the amount of $28,000.00 for past, present, and future pain and suffering. The trial court awarded Mr. Schwartzberg special damages in the amounts of $22,674.45 for his medical expenses, and $1,000.00 for a medical deductible. The trial court reduced the total amount of damages to $49,999.99 in accordance with the stipulation of the parties. Based on our review of the record, we cannot say the trial court’s damages award represents an abuse of its vast discretion.
J^DECREE
Based on the foregoing, we affirm the January 28, 2016 judgment of the trial court. All costs of this appeal are assessed to the defendants, Miller Guillory and Gar-da CL Southeast, Inc.
AFFIRMED.

. Allstate Fire and Casualty Insurance Company insured the armored van. The insurance policy, No. 9 85 636286 11/15, had liability limits of $15,000 per person and $30,000 per accident (15/30 liability policy).

. A driver making a left turn has a statutory duty, under La. R.S. 32:122, to "yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.” A left-turning motorist involved in a collision that occurs across the center line is burdened with the presumption that he is at fault, and he must offer evidence to show that he is free from negligence to avoid the imposition of liability. Miller v. Leonard, 588 So.2d 79, 83 (La. 1991).

.Prior to trial, the parties stipulated to the admission of certain evidence. Additionally, the trial court granted partial summary judgment in favor of Mr. Schwartzberg on the issue of liability, finding the defendants to be 100% at fault for the accident. See La. C.C.P. arts. 1915(A)(1)(3), 1915(B), and 966(E).