STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0983

JOHN DOE AND JANE DOE INDIVIDUALLY AND ON BEHALF OF
THEIR MINOR CHILD, JOHNNY DOE

VERSUS

ABC SCHOOL, JOSEPH DOE AND DEF SCHOOL BOARD

*DATE OF JUDGMENT:* DEC 17 2020

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
NUMBER 2008-12925, DIVISION A, PARISH OF ST. TAMMANY
STATE OF LOUISIANA

HONORABLE RAYMOND S. CHILDRESS, JUDGE

* * * * * *

Kathleen Ann Manning                 Counsel for Plaintiff-Appellee
Shannon S. Sale                      Justin Bleker
Richard A. Aguilar
Patrick J. O'Cain
New Orleans, Louisiana


Christopher R. Teske                 Counsel for Defendant-Appellant
Tara E. Clement                      St. Tammany Parish School Board
Shannon A. Kelly
Robert I. Siegel
New Orleans, Louisiana

* * * * * *

BEFORE: WHIPPLE, C.J., McDONALD, HIGGINBOTHAM, THERIOT,
AND CHUTZ, JJ.

CHUTZ, J. Dissents with Reasons by Theriot

McDONALD, J. Dissents for Reasons Assigned by J. Chutz.

**THERIOT, J.**

Defendant-appellant, St. Tammany Parish School Board (School Board), appeals the trial court's judgment, awarding damages in favor of plaintiff-appellee, Justin Bleker,[1] as the result of the School Board's independent negligence as well as for its vicarious liability as an employer. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed evidence established that during the fall of 2007, while he was a special education student in the fourth grade, Justin was molested and raped during school hours in the W.L. Abney Elementary School bathroom by Dino Schwertz, who was a janitor and, thus, a School Board employee. After another child made molestation accusations against Schwertz, Justin disclosed his own sexual abuse to his parents, who then reported the disclosures to the Slidell Police Department.

On May 30, 2008, this petition for damages was filed. A subsequent amendment to the petition identified Schwertz and the School Board as defendants.[2] A preliminary default judgment was entered against Schwertz, who was incarcerated after having been convicted and sentenced to life plus twenty years for the sexual assaults of Justin and another child.[3]

After discovery and motions, the matter proceeded to a five-day trial on the merits, which commenced on May 21, 2018. The trial court issued written reasons

---

[1] When this litigation ensued, Justin was a minor and suit was filed by his parents who identified him by the alias Johnny Doe and themselves as John Doe and Jane Doe, presumably to protect the minor child's identity. The petition was subsequently amended and the parents' identities as Terry Victor Bleker, Sr. and Rebecca Lynn Kennedy Bleker were set forth along with Justin's. Due to the sensitive nature of the allegations, the trial court issued an order sealing the record. The order was subsequently vacated, in part, after Justin became of the age of majority and the nature of the allegations were publicly well known. Also after he reached the age of majority, Justin was substituted as the proper party plaintiff. Although Terry Bleker and Rebecca Bleker were each awarded loss of consortium damages, the School Board did not raise any contentions challenging those awards and, therefore, they remain undisturbed in this appeal. Thus, the sole plaintiff in this appeal is Justin.

[2] The petition also named W.L. Abney Elementary School as a defendant. In its answer, the School Board noted that the elementary school was not a "juridical entity." No additional action has ensued relative to the elementary school.

[3] See *State v. Schwertz*, 2009-2183 (La. App. 1st Cir. 5/7/10), 2010 WL 1838325 (unpublished), writ denied, 2010-1315 (La. 1/7/11), 52 So.3d 883.

2

for judgment and, on November 28, 2018, signed a judgment confirming the default judgment against Schwertz. Additionally, the trial court awarded damages to Justin against Schwertz and the School Board for his general damages, past medical expenses, and future medical expenses. The judgment also declared that the School Board was vicariously liable for Schwertz's tortious actions. The School Board appealed.[4]

## ASSIGNMENTS OF ERROR

On appeal, the School Board asserts the following assignments of error:

(1) The trial court erred in finding that the School Board is vicariously liable for Schwertz's malicious, willful, and deliberate conduct that was intended to cause bodily harm to Justin Bleker.

(2) The trial court erred in failing to address and properly apply the discretionary function immunity afforded by La. R.S. 9:2798.1 to the Plaintiffs' claims that the School Board is independently liable for the negligent hiring and supervision of Dino Schwertz.

(3) The trial court erred in failing to allocate fault among the allegedly responsible parties in compliance with La. C.C. art. 2323 and La. C.C.P. arts. 1917 and 1812(C).

(4) The trial court erred in awarding Justin Bleker his past medical expenses.

(5) The trial court's award for future medical care and mental and physical pain, anguish, and suffering are erroneous given the evidence that the Plaintiffs actually introduced in their case in chief against Schwertz and the School Board.

## STANDARD OF REVIEW

Factual findings may not be set aside by this court unless we determine there is no reasonable basis for the findings and the findings are clearly wrong. See *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993). If the findings are reasonable in light of the record viewed in its entirety, this court may not reverse even if convinced that had it been the trier of fact, it would have weighed the evidence differently. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989).

---

[4] Schwertz did not appeal the judgment against him and, therefore, it remains undisturbed.

3

But where one or more trial court legal errors interdict the fact-finding process, the "manifest error" or "clearly wrong" standard no longer applies, and if the record is otherwise complete, an appellate court should make its own independent de novo review of the record and render a judgment in accordance with a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 747.

## DISCUSSION

### Vicarious Liability

On appeal, in challenging the imposition of liability against it, the School Board maintains that the trial court erred by finding it vicariously liable for Schwertz's conduct. Specifically, the School Board asserts that because Schwertz's criminal actions were outside the scope of his employment, it cannot be held liable.

The law in the area of vicarious liability is clear that an employer is liable for a tort committed by his employee if the employee was acting within the course and scope of his employment at the time of his commission of the tort. The course of employment test refers to time and place. The scope of employment test examines the employment-related risk of injury. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994, 996.

According to Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In order for an employer to be vicariously liable for the tortious acts of its employee, the employee's tortious conduct must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. An employer is not

4

vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. *Baumeister*, 673 So.2d at 996.

In determining whether vicarious liability applies, the court in *Baumeister* considered the following factors: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *Baumeister*, 673 So.2d at 996-97. The jurisprudence provides that a finding of factors (3) and (4) without more is insufficient to impose vicarious liability on an employer. *Johnson v. Littleton*, 45,323 (La. App. 2nd Cir. 5/19/10), 37 So.3d 542, 547. However, the Louisiana Supreme Court in *Baumeister* specifically pointed out that not all four factors must be met before liability may be found. The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment. *Baumeister*, 673 So.2d at 997.

The trial court's determination that a particular act is within the course and scope of employment for purposes of vicarious liability is a factual finding governed by the manifest error rule. The application of this standard of review mandates that this court can only reverse a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly wrong. *Baumeister*, 673 So.2d at 998.

Considering the entirety of the record, we find that the trial court was not clearly wrong in finding that the School Board is vicariously liable for Dino

Schwertz's actions. Schwertz, who was employed by the School Board as a janitor, had access to children, including Justin, through his employment. More specifically, one of Schwertz's duties as a janitor would include cleaning the school's bathrooms, and is thus the reason Schwertz would have been allowed extended access to the bathrooms, which are private areas where children were likely unsupervised. Per Justin's description of the assault, Schwertz was in the bathroom when Justin was exiting one of the stalls, shoved Justin into a stall, and sexually assaulted him. Therefore, although the sexual assault was certainly not authorized by the School Board, the opportunity to sexually assault an isolated child in the school's bathroom was at least partly actuated by Schwertz's purpose of acting for his employer.

Further, in another case involving Schwertz, this court has noted the fourth circuit's recognition in *Booth v. Orleans Parish School Bd.*, 2009-1505 (La. App. 4th Cir. 9/22/10), 49 So.3d 919, that a janitor's prominent presence on a school's campus and the fact that he is an adult make it natural that an elementary-school-aged child would view him as an authority figure, thus placing children at risk should a janitor take advantage of this status. See *Doe v. St. Tammany Parish School Bd.*, 2011-2344 (La. App. 1st Cir. 11/14/12), 2012 WL 5506480, at *5 n.5. Although *Doe*, 2012 WL 5506480, did not address vicarious liability, the fourth circuit did address vicarious liability in *Booth*, 49 So.3d at 922.[5] We find that Schwertz's status, duties, and presence at the school facilitated his assault on Justin.

In its written reasons, the trial court wrote:

It is the court's conclusion that the janitor's unsupervised proximity to students, his apparent authority over premises and young students, his

---

[5] In *Booth*, the fourth circuit considered whether a school board could be vicariously liable for a janitor's assault of a child at school, during the janitor's hours of employment but prior to school starting for the day. The fourth circuit found that the plaintiff's vicarious liability claims warranted a trial on the merits and should not be dismissed on summary judgment. *Booth*, 49 So.3d at 920-22.

ubiquitous presence in the school bathrooms, the lack of any policy directing the employee or students in this regard all render this to be sufficient for the finding of vicarious liability.

The trial court's reasoning is not manifestly erroneous. The sexual assault took place on the employer's premises, during the hours of employment, and was reasonably incidental to the performance of Schwertz's employment duties. Accordingly, we cannot say that the trial court manifestly erred or was clearly wrong in finding Schwertz's conduct to be sufficiently employment-related so as to impose vicarious liability on his employer, the School Board. See *T.S. v. Rapides Parish School Bd.*, 2008-1359 (La. App. 3rd Cir. 6/3/09), 11 So.3d 628, 632; see also *Samuels v. Southern Baptist Hosp.*, 594 So.2d 571, 574 (La. App. 4th Cir. 1992).

**Discretionary Immunity for Independent Liability**

On appeal, the School Board does not raise any direct contentions challenging the trial court's determination that the School Board was independently negligent, having breached a duty of reasonable care. Instead, the School Board urges that it is entitled to discretionary function immunity for its independent negligence.

Preliminarily, we note that our review of the record supports the conclusion that the School Board was independently negligent. A different panel of this court reversed a trial court's grant of summary judgment in a lawsuit filed by another of Schwertz's W.L. Abney Elementary School victims. As in the matter before us, the School Board was named a defendant and its independent liability was alleged. See *Doe*, 2012 WL 5506480, at *1.

As discussed in *Doe*, 2012 WL 5506480, at *4, Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate

elements: (1) the defendant had a duty to conform its conduct to a specific standard of care; (2) the defendant failed to conform its conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. Whether a duty is owed is a question of law; whether a defendant has breached a duty owed is a question of fact. *S.J. v. Lafayette Par. Sch. Bd.*, 2009-2195 (La. 7/6/10), 41 So.3d 1119, 1125, citing *Brewer v. J.B. Hunt Transport, Inc.*, 2009-1408 (La. 3/16/10), 35 So.3d 230, and *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270, 275-76. Cause-in-fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact. See *Johnson v. State Through Dep't of Transp. & Dev.*, 2017-0973 (La. App. 1st Cir. 4/3/19), 275 So.3d 879, 899, writ denied, 2019-00676 (La. 9/6/19), 278 So.3d 970. Concluding outstanding issues of material fact existed as to whether the School Board breached the duty it owed Schwertz's victim in that case, the *Doe* court remanded the matter to the trier of fact. *Doe*, 2012 WL 5506480, at *5.

In this case, the trial court, as the trier of fact, concluded that the School Board had breached its duty of reasonable care. Although Justin averred numerous acts and omissions by the School Board constituted negligence in hiring and supervising Schwertz, for purposes of this appeal we focus on the School Board's duty of reasonable care in retaining Schwertz as an employee, which was a duty owed to students on its W.L. Abney Elementary School campus.

Included in the documentary evidence was a copy of Schwertz's June 26, 2007 employment application that he signed and dated. In the application, Schwertz was asked, "Have you ever [pled] guilty or no contest or been convicted

8

of a criminal offense (other than traffic violations)?" Schwertz checked "No." The application also contained the following statement above the line provided for the applicant's signature:

> I certify that the information furnished in this application is true and complete. I understand that furnishing false information or omitting information on this application **could disqualify me from consideration for employment or could lead to discharge from employment**. You are hereby authorized to investigate my personal and employment history. [Emphasis added.]

Thus, the undisputed evidence shows that, in furtherance of its continuing duty to exercise reasonable care in the retention of employees it hired, the School Board chose as a method of providing for the security of its students the right to discharge from employment those who provided false information in their employment applications.

An examination of the other evidence admitted at trial reveals the following. Testifying on behalf of the School Board, Assistant Superintendent Peter Jabbia explained that in 2007, when Schwertz was hired by the School Board, Jabbia was an associate superintendent with Human Resources (HR) responsibilities. The hiring process for a janitor initially included ensuring with the principal of the school that a vacancy existed. Applications for employment with the School Board were collected year round and checked for accuracy and completion. With a vacancy, applications were forwarded to the principal of the school who would interview a candidate and make a recommendation to HR.

In this case, Jabbia explained that Schwertz's application was forwarded to Kathleen Katsorchis, W.L. Abney Elementary School's principal for the 2007-08 school year. She set up an interview with Schwertz from which she recalled no details other than her conclusions that Schwertz had presented himself well and understood what the job entailed. With no other applicants, Katosorchis

9

recommended Schwertz for the temporary full-time janitor position, which arose after the elementary school's regular janitor was absent on workers' compensation leave.

Schwertz was offered the position by HR. Once he accepted it, he was required to fill out paperwork, attend orientation, and submit to a background check. The employment application that Schwertz signed and dated on June 26, 2007, certifying that the information he had provided was true and complete, was among the paperwork.

Jabbia testified that the results of the background check were received by the School Board on September 19, 2007, after the commencement of the school year. He stated that Schwertz was hired prior to the return of the background check, which was permissible under Louisiana law.[6] Upon receipt of the results, Jabbia reviewed the identified criminal activity and determined that none of the offenses listed in Schwertz's background check were among those statutorily proscribed.[7] Schwertz's criminal activity included bank fraud and violation of protective orders. Jabbia acknowledged that Schwertz was on active probation for the bank fraud conviction and that he did not contact Schwertz's probation officer. Jabbia indicated that after receipt of the criminal activity set forth in the background check, he visited the clerk of court's website, which showed two entries for harassing phone calls, one violation of protective orders, and one issuance of worthless checks.[8] Jabbia pointed out that while Schwertz pled guilty to the violation of protective orders, the other three charges had been nolle prossed.

---

[6] Prior to its amendment by La. Acts 2018, No. 634, § 1, effective July 1, 2018, La. R.S. 17:15B stated in relevant part, "A person who has submitted his fingerprints to the Louisiana Bureau of Criminal Identification and Information may be temporarily hired pending the report from the bureau as to any convictions of or pleas of nolo contendere by the person to a crime listed in [La. R.S. 15:587.1C] except R.S. 14:74."

[7] See La. R.S. 17:15A and 15:587.1C.

[8] Because the listed offenses arose in "Covington" and "St. Tammany Parish," ostensibly it was the Twenty-Second Judicial District Court's clerk of court website that Jabbia examined.

10

According to Jabbia, during his review of the criminal activity, he was looking for any red flags that would prevent Schwertz's from serving as a temporary janitor and, in his estimation, there were none. Jabbia admitted that he did nothing, including pulling court records or checking with local law enforcement agencies, to determine the factual bases of any of the offenses, including Schwertz's guilty plea for violation of protective orders charges, and he did not request an explanation from Schwertz. Jabbia admitted that when he reviewed the results of the background check, he neither pulled Schwertz's application to determine whether Schwertz had responded to the inquiry about criminal activity truthfully nor compared the answer Schwertz had provided to the background check results. Despite the availability of the information in Schwertz's personnel file, Jabbia believed that Schwertz's untruthful statement about his prior criminal activity was first discovered subsequent to Schwertz's arrest in 2008, at which time Schwertz was asked for an explanation and, having none, advised "it was best that he moved on." Jabbia explained that had Schwertz not resigned, he would have been fired because he lied on his application and given the circumstances related to Schwertz's arrest for the sexual assaults. Jabbia agreed that upon discontinuance from active employment, the School Board indicated it would not rehire Schwertz because he had provided false information on his employment application.

Mindful that the School Board has not challenged the imposition of independent liability except to assert entitlement to discretionary immunity, we conclude that the record supports the conclusion that the School Board is liable for failing to exercise reasonable care in the retention of Schwertz as an employee subsequent to the return of the background check. See *Smith v. Orkin Exterminating Co., Inc.*, 540 So.2d 363, 366 (La. App. 1st Cir. 1989) (an

11

employer had a continuing duty to exercise reasonable care in retention of its employees where employer was required to send its employees directly into customers' homes; thus, where employer failed to properly administer its own chosen method of providing security, i.e., annual polygraph examinations of its employees, with due care, the employer breached its duty to its customer who was sexually assaulted by the employee in the customer's home).[9]

Insofar as its independent liability, the School Board contends that absent evidence that it violated either a state statute or regulation, it is immune from the imposition of liability under the discretionary act statute. Pursuant to La. R.S. 9:2798.1B of the discretionary act statute, liability shall not be imposed on public entities or their officers or employees "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."

The Louisiana Supreme Court has devised a two-step test to determine whether a public entity is entitled to immunity under Section 9:2798.1B. First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply. However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in

---

[9] Despite its specific factual finding that "the very nature of [Schwertz's] work ... underscore[d] the need for a proper background check *and follow up* [emphasis added]," the trial court's reasons for judgment do not clearly state that the School Board's breach in reasonable care applied to its duty in *retaining* Schwertz as an employee, although the trial court clearly found the School Board breached its duty in *hiring* Schwertz. The undisputed evidence showed that the School Board offered no explanation for why Schwertz's employment application was not compared to the results of the background check, thereby supporting the conclusion of a breach of reasonable care in the retention of Schwertz as an employee after September 19, 2007. That Schwertz had been hired before the results of his background check were available, never evaluated relative to the answers he provided in his employment application, and upon discovery, immediately terminated are findings from the evidence that support the conclusion of a causal relationship between the School Board's breach of reasonable care in the retaining of Schwertz as an employee and Justin's damages. Additionally, testimony of Jabbia that in 2007 the School Board had a policy of not hiring anyone convicted of the proscribed offenses despite the availability of a statutory waiver, see La. R.S. 17:15A and 15:587.1C, is suggestive of a no-tolerance standard by the School Board and lends further support for the conclusion that retention of Schwertz was a cause-in-fact of Justin's damages. Moreover, breach of this duty produced results reasonably associated with the risks against which it was provided to protect, i.e., the identification of employees of questionable character as evinced by their truthfulness. Therefore, under either a manifest error or de novo standard of review, there is no error in these factual conclusions.

social, economic or political policy. Section 9:2798.1 protects the government from liability only at the policy making or ministerial level, not at the operational level. *Greene v. Succession of Alvarado*, 2015-1960 (La. App. 1st Cir. 12/27/16), 210 So.3d 321, 330, citing *Fowler v. Roberts*, 556 So.2d 1, 15 (La. 1989) (on rehearing).[10]

Here, the School Board's policy as set forth in the employment application, wherein Schwertz was required to certify that he had provided true and complete information, including his response to whether he had ever pled guilty to or been convicted of a criminal offense, did not mandate a particular course of action. Instead, the School Board *could* disqualify an applicant from consideration for employment or *could* cause his or her discharge from employment. Thus, the policy involved discretion by the School Board. However, it is undisputed that in this case, School Board representatives did not exercise any discretion whatsoever. Instead, upon receipt of the return of the background check in which criminal activity was listed, HR representatives did not compare the answer provided by Schwertz indicating that he had never pled guilty to or been convicted of a criminal offense to determine whether he had provided untruthful information in his application. This failure was particularly concerning where Schwertz was hired prior to the results of the background check.

The School Board has offered no suggestion, and we have found none, explaining how the failure of Jabbia, HR representatives, or any other personnel within the governmental agency to act in conformity with its established policy, as

---

[10] As pointed out by the *Greene* court, 210 So.3d at 330 n.5, in a subsequent plurality opinion, the supreme court described the analysis of Section 9:2798.1 by the *Fowler* court as "faulty," noting that the statute does not contain the phrase "grounded in social, economic or political policy," nor does it distinguish between operational acts and policymaking acts. See *Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138 (La. 5/20/03), 851 So.2d 959, 967. Nevertheless, the *Gregor* court concluded that the governmental defendant in that case was not immune because the actionable conduct -- a failure to properly train code enforcement personnel -- was not a decision grounded in social, economic, or political policy. It was operational negligence in enforcing the sanitary code." *Gregor*, 851 So.2d at 968. The *Gregor* court thus based its decision on the same grounds articulated and applied in *Fowler* and its progeny. For this reason, we do not construe *Gregor* as overruling the two-step test set forth in *Fowler* for the application of Section 9:2798.1.

13

set forth in the employment application, constituted an act of discretion grounded in social, economic, or political policy. Accordingly, we find no error in the trial court's implicit conclusion that the School Board's independent liability was not at the policy making or ministerial level but rather at the operational level for which no immunity applies under Section 9:2798.1B.

## APPORTIONMENT OF FAULT

Because the trial court concluded that the School Board was vicariously liable for Schwertz's criminal actions, it aggregated the fault of Schwertz and the School Board into a single apportionment. See *Kenner Plumbing Supply, Inc. v. Rusich Detailing, Inc.*, 2014-922 (La. App. 5th Cir. 9/23/15), 175 So.3d 479, 502, writs denied, 2015-2110, 2015-2112, 2015-2115 (La. 2/5/16), 186 So.3d 1164, 1165 (the principles of comparative fault are not compromised when the trier of fact aggregates the fault of different persons into a single fault apportionment against the vicariously liable employer). As stated above, we have concluded that the trial court was correct in finding the School Board vicariously liable and, thus, we find no error in the trial court's aggregation of the fault of Schwertz and the School Board into a single apportionment.

## DAMAGES

The trial court awarded to Justin his past and future medical expenses as well as general damages. In fashioning its awards, the trial court stated the following in the written reasons for judgment:

> [Justin] was a Fourth Grade special education student when he was molested and raped by the school janitor in the boys['] bathroom at [W.L.] Abney Elementary School during the 2007 to 2008 school year. After the rape, [Schwertz] threatened to kill Justin and his family if Justin told anybody. Justin was at that time already diagnosed with apraxia of speech, dyslexia, and specific learning disorder, which impeded his ability to communicate with teachers and students. Only after other students reported [having been] assaulted by [Schwertz] did Mr. and Mrs. Bleker learn from their son that he had been sexually

assaulted. Thereafter, Justin was interviewed by [a] Child Advocacy Center Forensic Interviewer ... and later, [a] Detective .... Justin was called upon to testify regarding all the details to a jury of twelve men and women in 2009 when Schwertz was convicted of rape. He has been treated and interviewed by Social Workers, Psychiatrists, Physicians, and experts for the past 10 and ½ years; they have been privy to the personal details that would horrify any [11-year-old] boy into complete silence. He was the subject of public discussion and gossip in his junior high and high school years, he had to change schools, and he has suffered greatly as a result of the offense.

These findings by the trial court are supported by the evidence and, therefore, not manifestly erroneous. Therefore, with this backdrop, we examine the School Board's contentions relative to each of the awards.

## A. Past Medical Expenses

A plaintiff may recover reasonable medical expenses incurred as a result of an injury. *Mack v. Wiley*, 2007-2344 (La. App. 1st Cir. 5/2/08), 991 So.2d 479, 489, writ denied, 2008-1181 (La. 9/19/08), 992 So.2d 932. Past medical expenses are special damages that are capable of a determination with mathematical certainty. As such, they must be proven by a preponderance of the evidence. *Id.*

### 1. Evidentiary Ruling

The past medical expenses consisted of $20,762.50 related to treatment by Dr. Carolyn Weaver and $70,920.21 for the past medical treatment of all other healthcare providers. It is undisputed and the record bears out that after Justin rested his case-in-chief, the School Board moved for and was granted an involuntary judgment of dismissal relative to all of Justin's past medical expenses besides those of Dr. Weaver since the exhibit containing the bills had not been placed into evidence.[11] Because judgment against Schwertz was rendered by default and without him present to object, the trial court permitted Justin to place

---

[11] See La. C.C.P. art. 1672B ("In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief.").

the exhibit with all his medical bills into evidence and awarded $70,920.21 in other past medical expenses only against Schwertz in the written judgment. But because the trial court determined that the School Board was vicariously liable for Schwertz's actions, in its written reasons for judgment, it expressly found that the award of $70,920.21 in other past medical expenses was "an item of damages recoverable by [Justin] against [the School Board]." Because we affirm the trial court's imposition of vicarious liability against the School Board for Schwertz's actions, we find that the School Board is liable for the award of $70,920.21.

We next address the award of $20,762.50 for past medical expenses related to Dr. Weaver's treatment. On appeal, the School Board maintains that when it moved for and was granted the involuntary judgment of dismissal, Dr. Weaver's past medical expenses were within the scope of the dismissal. Thus, it contends that when the trial court permitted Dr. Weaver to include her expenses as part of her medical records, Justin's claim to those past medical expenses had already been dismissed with prejudice, and the trial court erred in allowing them into evidence.

Louisiana Code of Evidence article 103(A) provides, in part, that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of so proving. The trial court is granted broad discretion in rulings on admissibility of evidence and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. *Wright v. Bennett*, 2004-1944 (La. App. 1st Cir. 9/28/05), 924 So.2d 178, 183.

In admitting the Dr. Weaver's past medical expenses for Justin, the trial court stated:

16

Since [Weaver's] records have been previously offered and [Justin's attorney] said [she] would update them with a complete copy, and I would agree that the medical billing would in most cases be considered part of the complete copy, I'll allow [Weaver's] bills in.[12]

After our review of the transcript in this matter, we cannot say the trial court abused its discretion in admitting Dr. Weaver's bills as part of the exhibit of Dr. Weaver's records.

## 2. Propriety of Award

The School Board also attacks the trial court's award of past medical expenses both as to necessity and quantum. Reasoning that Justin already had pre-existing conditions that were treated alongside the injuries he sustained after Schwertz sexually assaulted him and attacking Dr. Weaver's compliance with professional and occupational standards for licensed social workers, the School Board urges that Dr. Weaver over-treated Justin and therefore, ultimately, the record fails to support a finding that the sexual assaults caused all the conditions for which Dr. Weaver treated him. Thus, the School Board challenges both medical causation and quantum, suggesting that Dr. Weaver's past medical expenses should be limited to eighteen therapy sessions during the first year after his disclosure of the sexual assaults.

The plaintiff bears the burden of proving a causal relationship between the injuries sustained and the tortious conduct that caused the injuries. Proof must be by a preponderance of the evidence. The test for determining the causal relationship is whether the plaintiff proved, through medical and lay testimony,

---

[12] The School Board does not dispute that Justin's attorney agreed to replace the exhibit of Dr. Weaver's records with a complete, certified set after the School Board complained about missing information. Instead, it asserts that the original set of records that was to be replaced did not include Dr. Weaver's bills, which were part of another exhibit. But the trial court has great discretion in the manner in which proceedings are conducted before the court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Pino v. Gauthier*, 633 So.2d 638, 648 (La. App. 1st Cir. 1993), writs denied, 94-0243, 94-0260 (La. 3/18/94), 634 So.2d 858, 859. In light of this record, we cannot say the trial court abused its discretion in permitting plaintiff's attorney the opportunity to replace the original exhibit with a complete certified set.

that it is more probable than not that the subsequent injuries were caused by the tortious conduct. *Schwartzberg v. Guillory*, 2016-0753 (La. App. 1st Cir. 2/17/17), 213 So.3d 1266, 1270.

A defendant in a personal injury case takes the victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor's conduct aggravates a preexisting condition, the tortfeasor must compensate the victim for the full extent of the aggravation. *Id.* Nevertheless, the burden of proof remains with the "eggshell plaintiff." See *Schwartzberg*, 213 So.3d at 1270.

Dr. Weaver was allowed, without objection, to testify as an expert in clinical social work, including work with child sexual abuse victims and clinical work with families dealing with sexual abuse, as well as Justin's primary therapist. Regarding Justin's past treatment with Dr. Weaver, the trial court stated:

> In the intervening years [since the sexual assaults], Justin has been diagnosed with and treated for Post Traumatic Stress Disorder [PTSD] by [Weaver], Ph.D., LCSW. He treated regularly with her until 2013, and to a lesser extent since then, but he has remained in treatment. She described his recurring nightmares, involuntary memories, night terrors, sleepwalking, and flashbacks, especially of being choked. He was very upset that authorities at the school did not believe him. He avoids public bathrooms, and he blames himself. Though these problems have lessened, they occasionally recur during stressful times....
>
> During this period, Dr. Weaver referred Justin to Dr. Jessica [Hof], a child and adolescent [p]sychiatrist, for medication management. Dr. [Hof] noted the anxiety and prescribed Remeron. She also noted his decline post assault as reflected in his refusal to attend school, repeating grades, and poor school performance.

These findings by the trial court are supported by the evidence and are not manifestly erroneous.

As the trial court found, Dr. Weaver noted that Justin's preexisting problems included learning disabilities, severe dyslexia, and apraxia, which she explained

18

occurred because the muscles in his mouth would not allow him to produce the words that he wanted to say and made it difficult for others to understand him, which left him angry due to his inability to express what he wanted to say to others. Dr. Weaver testified that her training and experience with children, as well as her history of having worked with Justin since about two months after he disclosed the sexual abuse, allowed her to compensate for the difficulties that Justin has with memory retention, speech, and other abstract reasoning issues that were related to his preexisting conditions.

Although she acknowledged that she did not constantly update her PTSD diagnosis of Justin in writing, Dr. Weaver testified that she informally evaluated him with the constant goal of providing therapy designed to help him get a cohesive understanding of what happened while desensitizing him. According to Dr. Weaver, during the ten years after the sexual assaults, Justin's PTSD condition has changed. She believed as of the day of trial he still had active symptoms. Dr. Weaver also underscored that the rape of Justin at W.L. Abney Elementary School affected about every aspect of his life and exacerbated the ordinary stresses of his life.

A reasonable factual basis exists for the trial court's conclusion that all of the therapy for which Dr. Weaver treated Justin was related to his psychological response to the rape. Accordingly, there is no manifest error and, as such, no basis to reduce the award to a lesser amount as suggested by the School Board.

### B. Future Medical Expenses

The trial court awarded Justin $20,000.00 in future medical expenses.[13] The School Board claims a lack of evidence to support a finding that the future medical

---

[13] The trial court's judgment expressly awarded medical expenses pursuant to La. R.S. 13:5106B(3), which requires the placement of future medical expenses into a reversionary trust and the direct payment to the provider of medical care and related benefits as incurred. Additionally, funds remaining in the trust statutorily revert to the political entity that established the trust upon the death of the claimant or upon the termination of the trust.

care is both inevitable and medically necessary and, therefore, warranted in light of the evidence presented at trial.

To recover future medical expenses a plaintiff must prove those expenses more probably than not will be incurred. A plaintiff shows the probability of future medical expenses with supporting medical testimony and an estimation of their probable cost. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. It is well acknowledged that an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty. Such awards "generally do not involve determining the amounts, but turn on question of credibility and inferences, i.e., whose experts and other witnesses does the [trier of fact] believe?" *Giavotella v. Mitchell*, 2019-0100 (La. App. 1st Cir. 10/24/19), 289 So.3d 1058, 1074-75, writ denied, (La. 1/22/20), 291 So.3d 1044. Much discretion is left to the judge or jury in its assessment of quantum of future medical damages. See *Giavotella*, 289 So.3d at 1075.

Dr. Weaver testified that in her opinion, since Justin had reached 22 years of age, he was stronger and psychologically ready to deal with the suppression of emotion that he has about the sexual violation. Because of this, Dr. Weaver suggested that he undergo intensive treatment to specifically pinpoint the aspects of PTSD that have not been emotionally neutralized. Noting that Justin was more mature and requesting neutralization of the lingering issues associated with the rape, Dr. Weaver testified that therapy sessions more than once a week over three years would address Justin's ongoing problems. At the time of trial, Dr. Weaver stated that one-hour sessions were $150.00 each. An award of $20,000.00 at the rate of $150/hour yields a little more than two and one-half years of one-hour

20

sessions once/week.[14] Thus, a reasonable factual basis exists to support the trial court's award for future medical expenses. Therefore, the award was neither manifestly erroneous nor an abuse of discretion.

## C. General Damages

General damages are defined as those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. *Pinn v. Pennison*, 2016-0614 (La. App. 1st Cir. 12/22/16), 209 So.3d 844, 849. The trier of fact is accorded much discretion in fixing general damage awards. See La. C.C. art. 2324.1; *Pennison v. Carrol*, 2014-1098 (La. App. 1st Cir. 4/24/15), 167 So.3d 1065, 1077, writ denied sub nom. *Pennison v. Henry*, 2015-1214 (La. 9/25/15), 178 So.3d 568. The discretion vested in the trier of fact is "great," even vast, so that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier of fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La. 1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. *Youn*, 623 So.2d at 1261. It is only when the

---

[14] We note that $20,000.00 ÷ $150.00 = 133.33 hours of therapy. Over the course of a 52-week calendar year, it amounts to 2.564 years of therapy at the rate of once per week.

21

award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should modify the award. *Id.*

In reviewing an attack on a general damage award, a court does not review a particular item in isolation; rather, the entire damage award is reviewed for an abuse of discretion, and if the total general damage award is not abusively high, it may not be disturbed. *Pennison*, 167 So.3d at 1078.

Justin's general damages as articulated by the trial court were for his "mental and physical pain, anguish, and suffering." The School Board asserts the total award of $350,000.00 for the molestation and rape of eleven-year-old Justin by the school's janitor in the school's bathroom during the school day was excessive and, therefore, an abuse of discretion. Citing other cases involving sexual assaults of students, the School Board suggests that "a reasonable award for general damages in this case would be at most $20,000[.00]."

The rape of Justin forever changed his life. Justin explained that although there were three instances of sexual abuse, over the years it turned into "one big incident." He recalled having been choked by the school janitor, having the school janitor throw something at him, and having been told by the school janitor to be quiet and that he was going to kill Justin. Justin explained the school janitor yanking off his clothes and raping him were the main parts that have stuck in his head all these years and that he does not think about the small details. Justin described the time of the rape, saying:

> I remember being in the bathroom using the bathroom. I come out of the stall and he's in the restroom. The door is closed. And he's walking toward me.
>
> I'm not thinking anything of it, because I figured he's coming in here to clean. He's a janitor. And the next thing is he's shoving me into … the stall … the handicapped stall in the fourth grade hallway.

After the incidents, Justin said that he was scared. He did not tell the teacher or his parents because he was scared what the school janitor might do to him since the janitor had threatened him. He worried that the school janitor might kill him. Justin started using a different bathroom and stopped going to his homeroom, which was in the hallway where the bathroom in which he was raped was located.

On March 10, 2008, W.L. Abney Elementary School personnel sent a letter home with students, informing parents about "allegations involving a former School [Board] employee" that involved two students, noting the school took the matter "very seriously," and was working closely "with law enforcement in investigating the complex allegations of wrongdoing." After having someone read the letter to him, Justin tried to hide it from his parents because he knew it was the school janitor. Justin was afraid the school janitor would try to hurt him. When a news story reported the details of the school janitor's arrest, including broadcast of Schwertz's photograph while the family ate dinner, Justin's face turned white. Justin was afraid that if he said anything he would be hurt. But his parents knew something was not right. Justin agreed to talk to his father after his father sent his mother and sister to a neighbor's house. Justin then told his father what had happened to him at school. Thereafter, his parents took Justin to the police.

Justin finished out the 2007-08 school year in a home-school program. He was unsuccessful in returning to public school during his elementary years. He recalled the one time that he attempted to go to a public elementary school as having started out well, but when he found a janitor cleaning in the bathroom, he became upset, frustrated, aggravated, and scared. He returned to public school during his junior high and high school years, but was held back in 8th grade and unable to graduate from high school due to insufficient credits after he needed to repeat 11th grade.

23

Because of the sexual assaults, Justin felt as though he has been shunned by former W.L. Abney Elementary personnel. It took him many years to be able to ride in a car or drive past the school. Justin testified that he pursued the lawsuit against the School Board because he does not want this to happen to another student. He hoped the School Board would fix its mistakes and be more careful in who it chooses to hire.

Additionally, the record shows that the toll on Justin's health has been pervasive. As we have already noted, he has undergone over ten years of therapy and seen numerous doctors, including for exacerbation of severe gastrointestinal (GI) tract issues. Continued problems with sleepwalking, night terrors, and GI tract accommodations have profoundly impacted his ability to perform at work. Indeed, he is able to work primarily because his father provided a job and makes allowances to address Justin's psychological and physiological needs.

The trial court did not abuse its vast discretion in awarding $350,000.00 in general damages to Justin. Accordingly, that portion of the judgment is affirmed.

## DECREE

We affirm the trial court's judgment awarding damages in favor of plaintiff-appellee, Justin Bleker, as the result of the School Board's independent negligence as well as for its vicarious liability as an employer. Appeal costs are assessed to the St. Tammany Parish School Board in the amount of $12,372.89.

**AFFIRMED.**

24

JOHN DOE AND JANE DOE
INDIVIDUALLY AND ON
BEHALF OF JOHNNY DOE

VERSUS

ABC SCHOOL, JOSEPH DOE
AND DEF SCHOOL BOARD

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0983

**CHUTZ, J.**, agreeing in part and dissenting in part.

I agree with the majority's affirmance of the trial court's finding that St. Tammany Parish School Board (School Board) was independently liable when it continued to employ Dino Schwertz as a janitor after the return of the School Board's background check revealed that Schwertz had lied on his employment application. Likewise, I take no issue with either the denial of discretionary immunity to the School Board for its independent liability or the amount of damages that the trial court awarded. But based on my review of the evidence before us relative to the four factors identified by the Louisiana Supreme Court in *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994, 997, I believe on review we are constrained to conclude that the School Board is not vicariously liable for Schwertz's criminal actions.

The trial court found that Justin Bleker was sexually assaulted by Schwertz in the school bathroom during school hours. And on appeal, the School Board does not dispute that either Schwertz's sexual assault of Justin, having occurred in the school bathroom, was on the School Board's premises or that the criminal conduct occurred during Schwertz's hours of employment since it was at a time when Justin was attending school. Thus, two of the four *Baumeister* factors are established by the evidence. But the record is devoid of any evidence to support the other two factors, i.e., findings either that Schwertz's sexual assault of Justin was primarily

employment rooted or that it was reasonably incidental to the performance of his duties as a janitor of the school. See *Baumeister*, 673 So.2d at 999 (the likelihood that a nursing supervisor will find an employee alone in the nurses' lounge and sexually assault her is not a risk fairly attributable to the performance of the supervisor's duties; a nursing supervisor's responsibilities do not include sexually oriented physical contact with a co-employee). See also *Honor v. Tangipahoa Par. Sch. Bd.*, 2013-0298 (La. App. 1st Cir. 11/1/13), 136 So.3d 31, 33-36, writ denied, 2014-0008 (La. 2/28/14), 134 So.3d 1181 (where defendant, another employee custodian, employed at the same school as plaintiff employee custodian touched plaintiff's custodial cart and, in response to questioning by plaintiff, engaged in criminal conduct when he threw her against a wall and punched her in the face, defendant custodian was not within the ambit of his assigned duties or in furtherance of his employer's objective). Cf. *Latullas v. State*, 94-2049 (La. App. 1st Cir. 6/23/95), 658 So.2d 800, 803-05 (employer State was vicariously liable for the rape of a prisoner on prison grounds by its employee prison guard while the guard was in charge of the prisoner's work crew, where the guard told the inmate to accompany him to perform work in an isolated area and raped the prisoner since the rape occurred while the guard was performing his duties and the guard's job duties actually permitted him to commit the rape).

Simply stated, the likelihood that a janitor will sexually assault a student in the bathroom is not a risk fairly attributable to the performance of the janitor's duties. Clearly, a school janitor's responsibilities do not include any sexual activity and, in particular, the sexual assault of a student during the school day and on the school premises. As such, I believe that the trial court erred in concluding the School Board was vicariously liable for Schwertz's conduct and aggregating Schwertz's fault with that of the School Board into a single apportionment.

2

The School Board's liability is founded on its failure to exercise reasonable care in retaining Schwertz as an employee which it breached when it ignored its own policy of evaluating the truthfulness of his representations on the employment application. This dereliction of evaluation is particularly troubling in this case since Schwertz's background check identified criminal activity, including a conviction for which he was on active probation and a guilty plea for a violation of protective orders for which the factual basis was not disclosed. As a result of the failure, the School Board missed the chance to remove Schwertz from the elementary school campus and thereby avoid the commission of the sexual assaults of a student. While Schwertz's conduct of sexually molesting and raping Justin is beyond reprehensible, the School Board's omission permitted an opportunity for the criminal conduct to occur. Under these circumstances, I would apportion 50% fault to the School Board and 50% to Schwertz.

Accordingly, I dissent in part.